*In re* J.B. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. A.B. *et al.*, Respondents-Appellants).

Second District    No. 2—99—0005

Opinion filed April 18, 2000.

■■■■■■■■ ■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Phyllis J. Perko, of Law Offices of Harlovic & Perko, of West Dundee, for appellants.

David R. Akemann, State's Attorney, of St. Charles (Martin P. Moltz and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Carole J. Grahn-Hayes, of Geneva, guardian *ad litem*.

JUSTICE McLAREN delivered the opinion of the court:

Following a disposition hearing, the trial court found that it was in the best interest of J.B., S.B., D.B., L.B., and T.B. (the minors) to be made wards of the court. Respondents, A.B. and G.S., appeal, arguing that the trial court's judgment must be reversed because (1) the State failed to amend its petition to reflect the basis upon which the State was seeking a neglect adjudication; (2) the trial court failed to consider all of the relevant factors needed in determining that the minors were left unsupervised; and (3) the trial court erred in finding that the minors were neglected. We reverse.

On July 2, 1998, a supplemental petition for adjudication was filed alleging that the minors were neglected. The petition was entitled a "supplemental petition" because respondents were already going through adjudication and disposition proceedings with one of their other children. The supplemental petition provided that the minors' environment was injurious to their welfare because A.B., the minors' mother, left the minors home alone for approximately 30 minutes. The petition further alleged that A.B. had a history of leaving the minors home alone without supervision.

At the adjudication hearing, the testimony revealed that on February 12, 1998, the Department of Children and Family Services (DCFS) received a hot line call about the minors. The call was placed because the minors had been left at home alone. At the time of the call, the minors were nine years old, six years old, five years old, two years old, and five or six months old.

The facts surrounding the hot line call revealed that A.B. left the

minors home alone at approximately 3:30 p.m. She was gone from the home for between 30 and 45 minutes. A.B. left the minors at home while she went to look for an apartment. The apartment she went to look at was about two to three blocks away from the family's current home. The family had to leave the house they were living in because the owner of the house failed to pay the mortgage on the home. Thus, the bank was seeking to foreclose on the property. A.B. was informed that if the bank took over ownership of the property, she and her family would be forced to leave.

When A.B. left the minors home alone, she put J.B., her nine-year-old child, in charge of watching the other children. While A.B. did not think that J.B. was responsible enough to watch the minors, she believed that she had no other choice but to leave the children in J.B.'s care. She also thought that J.B. would be capable of watching the minors on this particular occasion because the two youngest children were sleeping.

A.B. did not want to take the minors with her to go look at the apartment because she was afraid the landlord would not rent the apartment to her if the landlord knew about the minors. A.B. testified that she did not have any money to pay a baby-sitter, and she did not ask a neighbor to watch the minors because she did not want the neighbors to know about her personal affairs.

The day after the incident, Jerry Waite, a DCFS investigator, interviewed A.B. and J.B. Prior to the interview, Waite ran a history on the family's previous involvement with DCFS. The history showed that DCFS made three earlier reports against the family for inadequate supervision. The three prior incidents arose in March 1991, September 1993, and January 1997. The history further showed that DCFS made two reports against the family in 1991. These reports alleged that the minors suffered from bruises, cuts, and welts.

During the hearing, the State asked the trial court to take judicial notice of the other case involving respondents' other child. The State claimed that this other case also involved inadequate supervision allegations. The State withdrew its request when the trial court pointed out the fact that this prior case did not involve inadequate supervision charges.

After all of the testimony was taken, the trial court adjudicated the minors neglected. The trial court made this determination under section 2—3(1)(d) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—3(1)(d) (West 1998)). The trial court recognized that the petition alleged neglect under section 2—3(1)(b) of the Act, but it chose to find neglect, consistent with the testimony, under section 2—3(1)(d) of the Act. In adjudicating the minors neglected, the trial court stated

that it was not taking into account the prior allegations that A.B. left the minors unsupervised because it did not even know the circumstances surrounding the prior reports.

Following the adjudication hearing, a disposition hearing was held. At this hearing, the trial court found that the best interests of the minors would be met by making the minors wards of the court. This timely appeal followed.

Respondents first argue that the trial court's judgment should be reversed because respondents were not given notice that the State was going to proceed under section 2—3(1)(d) of the Act. Respondents claim that in the supplemental petition the State only indicated that it was proceeding under section 2—3(1)(b) of the Act (705 ILCS 405/2—3(1)(b) (West 1998)).

■ Section 2—3(1)(b) of the Act provides that a minor will be deemed neglected if the minor is under 18 years old and is living in an environment that is injurious to the minor's welfare. 705 ILCS 405/2—3(1)(b) (West 1998). Section 2—3(1)(d) of the Act provides that a minor is neglected when a minor who is under 14 years old is left unsupervised for an unreasonable period of time without regard for the minor's mental health, physical health, safety, or welfare. 705 ILCS 405/2—3(1)(d) (West 1998). In order to determine whether or not a minor has been left without supervision, a court must look at the 15 factors delineated in sections 2—3(1)(d)(1) through (1)(d)(15) of the Act (705 ILCS 405/2—3(1)(d)(1) through (1)(d)(15) (West 1998)).

■ Petitions for the adjudication of wardship are civil in nature. *In re Harpman*, 134 Ill. App. 3d 393, 396 (1985). Therefore, the petitions should comply with the general rules of civil pleadings. *In re Harpman*, 134 Ill. App. 3d at 396.

In civil proceedings, it is well settled that a party may not succeed on a theory that is not contained in the party's complaint. *Schultz v. Schultz*, 297 Ill. App. 3d 102, 106 (1998). Any proof presented to the court that is not supported by proper pleadings is as defective as pleading a claim that is not supported by proof. *Schultz*, 297 Ill. App. 3d at 106. Thus, a party can only win the case according to the case the party has presented in the pleadings. *Schultz*, 297 Ill. App. 3d at 106.

■ Here, in the supplemental petition, the State provided that the minors were neglected because "they [were] under 18 years of age and their environment [was] injurious to their welfare; to wit: their mother, [A.B.], [had] a history of indicated reports for inadequate supervision; on or about 2/12/98, the minors were left at home alone for approximately ½ hour." Clearly, the petition alleged that the minors were neglected because their environment was purportedly

injurious to their welfare. The factual basis for this allegation was that A.B. left the minors home alone for approximately 30 minutes, and A.B. allegedly left the minors inadequately supervised in the past. The petition did not claim that the minors were neglected because respondents failed to provide adequate supervision. Specifically, nowhere did the State claim how or even if any of A.B.'s actions affected the minors' mental health, physical health, safety, or welfare. If the State had made such a claim, it would have pleaded some of the elements presented in sections 2—3(1)(d)(1) through (1)(d)(15) of the Act. The State cites to only 1 of these 15 factors, and this factor provides that the court must look at the amount of time the minors were left without supervision. 705 ILCS 405/2—3(1)(d)(4) (West 1998). Here, according to the petition, the minors were left at home alone for 30 minutes, and we do not believe, with this fact alone, that the State was attempting to say that the minors should be found neglected because they were left unsupervised.

Despite the fact that the State failed to include a claim in the petition that alleged that the minors were left without supervision, the State nevertheless presented its case to the trial court as if it were trying to prove that the minors were neglected because they were left at home alone without supervision. For example, we noticed during Waite's testimony that the State did not ask Waite if he had formed an opinion as to whether or not leaving the minors at home alone created an injurious environment. Rather, the State asked Waite if he had formed an opinion about whether or not the minors should have been left home alone. Waite responded that he believed, given the ages of the minors, that the minors should not have been left unsupervised. Not surprisingly, the age of the minor is 1 of the 15 factors a court must consider in deciding whether or not a minor has been neglected because the minor was left unsupervised.

We also must note that during the hearing respondents' attorney started to ask Waite questions that were specifically related to the 15 factors set forth in sections 2—3(1)(d)(1) through (1)(d)(15). The State objected, saying "that that is not how the pleading is in the petition." The trial court overruled the objection in part because the petition alleged injurious environment as the basis for neglect and in part because the evidence of neglect was based on the fact that the minors were left at home alone.

Under section 2—13(5) of the Act, a "court may allow amendment of the petition to conform with the evidence at any time prior to ruling." 705 ILCS 405/2—13(5) (West 1998). Obviously, based on the trial court's ruling on the objection and the way the State presented its case, the State was aware that the evidence suggested that neglect

may lie under the failure to supervise provision of the neglected and abused minors statute. Nevertheless, at no time prior to the court's ruling did the State seek to amend the petition to allege that the basis for neglect should be that the minors were left unsupervised. Because the State never amended the petition, never informed respondents that it was proceeding under inadequate supervision allegations, and argued its case under inadequate supervision, the trial court's judgment must be reversed.

Because we must reverse the trial court's judgment on the basis that the State failed to put in its petition that it was also proceeding under section 2—3(1)(d) of the Act (705 ILCS 405/2—3(1)(d) (West 1998)), we need not address respondents' remaining arguments.

For these reasons, the judgment of the circuit court of Kane County is reversed.

Reversed.

THOMAS and RAPP, JJ., concur.