In re ARTHUR H., JR., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Arthur H., Sr., Respondent-Appellant).

Second District   No. 2—02—0670

Opinion filed May 12, 2003.

KAPALA, J., dissenting.

Michael W. Raridon, of Martenson, Blair & Raridon, P.C., of Rockford, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Robert J. Biderman and Linda Susan McClain, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GROMETER delivered the opinion of the court:

Respondent, Arthur H., Sr., appeals from the judgment of the circuit court of Winnebago County adjudicating his son, Arthur H., Jr., a neglected minor pursuant to sections 2—3(1)(b) and 2—3(1)(d) of the Juvenile Court Act of 1987 (Act) (705 ILCS 405/2—3(1)(b),

2—3(1)(d) (West 2000)) and making the minor a ward of the court. We reverse and remand for further proceedings.

## I. BACKGROUND

Lorraine H. (Lorraine) is the mother of five children, Niya N. (born July 18, 1994), Arthur H., Jr. (born November 30, 1996), Jaquane H. (born May 22, 1998), Lora H. (born July 20, 1999), and Earl H. (born May 21, 2000). Respondent, Arthur H., Sr., is the father of both Arthur H., Jr., and Jaquane H. The instant appeal involves only Arthur H., Jr.

This case commenced on March 23, 2001, when the State filed a petition alleging that Arthur H., Jr., was a neglected minor. A three-count amended petition was filed on January 30, 2002. Count I of the petition provided that Arthur H., Jr.'s environment was injurious to his welfare "in that the minor's sibling had a hernia approximately 2½ to 3 inches in diameter and the mother had previously failed to follow the doctor's treatment and administer medication." See 705 ILCS 405/2—3(1)(b) (West 2000). Count II alleged inadequate supervision "in that the minor's mother left the minor in the care of a 14 year old for an unreasonable amount of time and the minor's [sic] were dirty and wearing dirty clothing that smelled of urine, and the minor's sibling was allowed to drink from a dirty bottle [containing] curdled milk." See 705 ILCS 405/2—3(1)(d) (West 2000). Count III alleged that Arthur H., Jr.'s environment was injurious to his welfare "in that the minor's sibling displayed lethargy, an inability to move, imbalance, jittery eyes, and neck twitches and the mother failed to get proper medical attention." See 705 ILCS 405/2—3(1)(b) (West 2000). The petition also stated that it was in the best interest of Arthur H., Jr., and of the public that the minor be made a ward of the court.

On May 23, 2002, the trial court held an adjudicatory hearing at which the following evidence was adduced. On August 15, 2000, the Department of Children and Family Services (DCFS) received a hotline call regarding Earl H. The caller alleged that Lorraine had removed Earl H. from his apnea monitor without the authorization of a physician and that Lorraine had missed Earl H.'s apnea clinic appointments. Within 24 hours, Angela Harris, an investigator with DCFS, met with Lorraine at Lorraine's home. Lorraine was present with her five children. Earl H. was asleep in a baby swing but was not attached to his apnea monitor. The other children were watching television and playing. According to Harris, the children were dressed "fairly appropriate[ly]." Harris explained the importance of the apnea monitor, and Lorraine attached it to Earl H. Lorraine explained that she did not take Earl H. to the apnea clinic because she had no ride. The children were not removed from the home at that time.

Early in February 2001, DCFS received a report of medical neglect regarding Lorraine's children. On February 8, 2001, DCFS investigator Cristina Gloria visited Lorraine's home. During the visit, Gloria met with Lorraine. All of Lorraine's children were present except for Arthur H., Jr., who was with respondent in Milwaukee, Wisconsin. Gloria testified that the home's kitchen was clean but that there were dirty diapers and garbage on the floor elsewhere. In addition, there were mattresses on the floor and there were no cribs for the children. Gloria asked about Earl H.'s apnea monitor and whether Earl H.'s and Niya N.'s immunizations were current. Lorraine told Gloria that she decided to discontinue using the apnea monitor. She also stated that she was preparing to take the children for their shots and that she would clean the home.

Gloria next visited Lorraine's home on March 13, 2001, in response to information that Lorraine did not have the children immunized. Lorraine told Gloria that she did not have the children immunized because she did not have a ride to the doctor's office. During the visit, Gloria noted that the kitchen smelled of urine. In addition, Earl H. was wearing a dirty shirt and wheezing. According to Lorraine, the urine odor had been caused by some broken pipes, which were in the process of being repaired. Gloria told Lorraine that she would arrange transportation to take Earl H. to the doctor. Arthur H., Jr., was not present during the March 13, 2001, visit. On March 15, 2001, Gloria introduced Lorraine to the family educator who would take Lorraine and Earl H. to the doctor.

Gloria returned to Lorraine's home on March 21, 2001, because Lorraine failed to keep an appointment. When Gloria arrived, she found Niya N., Jaquane H., Lora H., and Earl H. in the care of a 14-year-old boy. Earl H. was dirty, wearing an unclean diaper, and drinking a bottle of curdled milk. Niya N. was wearing dirty clothes and smelled of urine. Jaquane H. and Lora H. were dressed appropriately and were not as dirty as the other two children. The 14-year-old boy told Gloria that Lorraine had left the home to purchase diapers. Gloria waited approximately 45 minutes, but Lorraine did not show up. Protective custody of the four children was taken at this time. During a medical examination of Earl H., Gloria observed a lemon-sized protrusion from the minor's navel.

At the conclusion of Gloria's testimony, Gloria stated that DCFS had difficulty in locating Arthur H., Jr. The following discussion then took place:

"Q. [Assistant State's Attorney Currie]: Okay. Can you please describe the difficulty that you had in locating Arthur, Jr.?

MR. RARIDON [Attorney for Respondent]: Well, judge, I would

object at this point. There's been no testimony that he was present at any of these occurrences.

MS. HUGHES [Attorney for Lorraine]: Judge, it's also not relevant to this petition.

THE COURT: Counsel, why are you going into it?

MS. CURRIE: I just wanted to indicate he was a part of this family and that normally he was in mom's custody and care, but—I can—

THE COURT: Well, but you haven't established that, and asking this question doesn't establish that.

MS. CURRIE: Okay.

THE COURT: I'm going to sustain *** the objection."

The record reveals that Arthur H., Jr., was taken into custody by authorities in Milwaukee sometime in May or June 2001.

After the State rested, Lorraine moved for a directed finding as to counts I and III. The court took the motion under advisement. Respondent then moved for the dismissal of the petition directed at Arthur H., Jr. He argued that there was no evidence that Arthur H., Jr.'s environment was injurious to his welfare because there was no evidence that Arthur H., Jr., "was in the environment" during any of Gloria's visits to Lorraine's home. In addition, respondent asserted that the court lacked jurisdiction over Arthur H., Jr., because the State failed to prove that Arthur H., Jr., was a resident of Winnebago County, Illinois. The trial court denied respondent's motion.

Lorraine then testified on her own behalf. She claimed that she was the only person responsible for her five children. Lorraine then rested.

Respondent testified that he has resided in Milwaukee, Wisconsin, for 15 years and that Arthur H., Jr., has lived primarily with him for five years. Respondent explained that when Arthur H., Jr., was born, he asked Lorraine to let him have custody of the child because the child was respondent's only son. According to respondent, "every three months" Arthur H., Jr., would spend time with Lorraine, and then she would bring the child "right back." Respondent testified that in spring 2001, before Arthur H., Jr., was taken into custody, the child resided with him. Respondent also stated that he only recently learned that Jaquane H. was his son.

On cross-examination, respondent testified that Arthur H., Jr., began living with him when the child was about six months old. Respondent also stated that Arthur H., Jr., spent three months of the year with Lorraine. Respondent admitted that he has no documents awarding him guardianship or custody of Arthur H., Jr. According to respondent, the custody arrangement was "voluntary" and if Lorraine

wanted to take Arthur H., Jr., she could. Respondent testified that in August 2000, Arthur H., Jr., was residing with him. Respondent stated that between July 23, 2000, and March 2001, Lorraine did not have any contact with Arthur H., Jr.

Upon questioning from the court, respondent testified that he signed an acknowledgment of parentage in Wisconsin. He also indicated that Lorraine instituted child-support proceedings against him in Wisconsin but that the suit was dismissed because respondent was "taking care" of Arthur H., Jr.

On its own motion, the court recalled Lorraine to the witness stand. Lorraine stated that Arthur H., Jr., began living with respondent when the child was eight months old. According to Lorraine, Arthur H., Jr., would spend several months with her and then several months with respondent. She claimed that Arthur H., Jr., was with her in August 2000. On cross-examination, Lorraine stated that Arthur H., Jr., "spent most of his time with his dad" in Milwaukee. She later stated, however, that the child spent an equal amount of time residing with each parent.

Respondent called his mother, Bobby H., as a rebuttal witness. Bobby H. testified that Arthur H., Jr., resided primarily with his father in Milwaukee. According to Bobby H., she saw Arthur H., Jr., on a regular basis, and the child would generally visit his mother for about a week at a time. On cross-examination, Bobby H. stated that the only time Arthur H., Jr., spent more than a month with Lorraine was before the child came to live with respondent.

During closing arguments, respondent renewed his contentions that the State did not establish that Arthur H., Jr., resided in Winnebago County or that the minor was exposed to any of the conduct alleged in the State's three-count petition. The court took the matter under advisement. Following a brief recess, the court announced its decision. Initially, the court granted Lorraine's motion for a directed finding as to count III of the petition. With respect to Arthur H., Jr., the court commented:

> "The evidence in this case demonstrates that all of the children with the exception of Arthur, Jr., have lived full-time with their mother in Rockford, Illinois at all times that are relevant hereto. Arthur, Jr., spends substantial time living with his mother in Rockford. He—the mother and father of Arthur, Jr., have an informal shared joint parenting agreement. Frankly, the Court is not certain as to exactly how much time Arthur spends with his mother and/or with his father. The mother testified that it was on and off two or three months with her, then two or three months with father. Father testified that isn't the case at all, that Arthur

might spend up to a month with his mother, but more often than not he would spend a week with his mother, then come back and stay with him for a couple of months, then they go back to mom for a week or so. I think somewhere in-between there lies exactly how much time Arthur spends with each of them. The point is this. Arthur spends substantial time here in Illinois. Neither one of these parents have any legal documentation granting to them sole custody or any custodial arrangement. Therefore, this Court will proceed on the assumption that they have an agreement worked out between the two of them that they are sharing jointly the custody of this child. Therefore, this court is of the opinion that the contacts that Arthur has with the State of Illinois extend the jurisdiction of this Court over him."

The court then noted that Earl H. was prescribed an apnea monitor, that Lorraine failed to use the monitor, and that she had failed to follow up with medical care in relation to the monitor. The court further found that Lorraine failed to have Earl H. immunized. The court also noted that the children's environment placed them at risk of harm in that the environment and the children were dirty. The court then ruled that the State proved by a preponderance of the evidence that Earl H. is a neglected minor as alleged in counts I and II of the petition. However, the court specified that it did not find neglect "in relation to this alleged hernia." The court remarked that there was no evidence that the child had a hernia or that he required immediate medical care. The court rejected arguments that count I did not encompass the failure to provide treatment for sleep apnea and the children's immunizations. The court then found that the State met its burden of proof by a preponderance of the evidence with respect to the remaining four children.

The cause was continued for disposition to May 31, 2002. At that hearing, the trial court adjudicated the minors wards of the court and determined that it was in the best interests of the children that guardianship be granted to DCFS with the discretion to place the children with a responsible relative or in traditional foster care. Respondent timely appealed.

## II. ANALYSIS

■ At the outset, we point out that we are concerned solely with the status of Arthur H., Jr., with respect to respondent, the minor's father. In this regard, we are reminded that although the Act seems to treat both parents as a unit, the trial court may make a neglect finding and adjudicate wardship of a minor as to one parent while not finding neglect as to the other parent. *In re S.S.*, 313 Ill. App. 3d 121, 133 (2000).

■ Proceedings for adjudication of wardship should not be undertaken lightly. *In re Harpman*, 134 Ill. App. 3d 393, 396-97 (1985). The paramount consideration in proceedings initiated under the Act is the best interest of the child. *In re N.B.*, 191 Ill. 2d 338, 343 (2000). It is the State's burden to prove allegations of neglect by a preponderance of the evidence. In other words, the State must demonstrate that any finding of neglect is more probably true than not true. *In re M.H.*, 196 Ill. 2d 356, 365 (2001); *In re L.M.*, 319 Ill. App. 3d 865, 868 (2001). As a reviewing court, we will not overturn a trial court's determination of neglect unless it is against the manifest weight of the evidence. *In re T.W.*, 313 Ill. App. 3d 890, 892 (2000). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident. *In re D.F.*, 201 Ill. 2d 476, 498 (2002). Under a manifest weight of the evidence standard, we give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and the witnesses, assess their credibility, and weigh the evidence. *D.F.*, 201 Ill. 2d at 498-99.

■ The Act defines a neglected minor to include "any minor under 18 years of age whose environment is injurious to his or her welfare" (705 ILCS 405/2—3(1)(b) (West 2000)) or "any minor under the age of 14 years whose parent or other person responsible for the minor's welfare leaves the minor without supervision for an unreasonable period of time without regard for the mental or physical health, safety, or welfare of that minor" (705 ILCS 405/2—3(1)(d) (West 2000)). Furthermore, the Act provides a nonexclusive list of 15 factors that the court must consider in determining whether the minor was left without regard for the mental or physical health, safety, or welfare of the minor or whether the period of time was unreasonable. 705 ILCS 405/2—3(1)(d)(1) through (1)(d)(15) (West 2000).

The concept of neglect has no fixed and measured meaning. *In re J.P.*, 331 Ill. App. 3d 220, 234 (2002). Similarly, the term "injurious environment" is an amorphous concept that cannot be defined with particularity. *In re Z.Z.*, 312 Ill. App. 3d 800, 804 (2000). For this reason, cases involving an adjudication of neglect and wardship are *sui generis*, and each case must ultimately be decided on the basis of its own particular facts. *In re Christina M.*, 333 Ill. App. 3d 1030, 1034 (2002). Nevertheless, neglect has generally been held to encompass the failure to exercise the care that circumstances justly demand and encompasses both wilful and unintentional disregard of parental duty. *Christina M.*, 333 Ill. App. 3d at 1034. With these principles in mind, we turn to respondent's arguments.

### A. Injurious Environment

Respondent argues that the trial court's judgment with respect to

count I of the petition should be reversed. He initially suggests that in making its determination that Arthur H., Jr., was neglected as alleged in count I, the trial court focused primarily on its finding of neglect of Arthur H., Jr.'s younger half-sibling, Earl H. Respondent strenuously argues that the trial court erred in basing its decision on a theory of "anticipatory neglect," especially where Arthur H., Jr., was not present during the alleged instance of neglect. We agree.

■ Under the Act, proof of neglect of one minor shall be admissible evidence on the issue of the neglect of any other minor for whom the respondent is responsible. 705 ILCS 405/2—18(3) (West 2000). However, there is no *per se* rule of anticipatory neglect in Illinois, and each case concerning the adjudication of minors must be reviewed according to its own facts. *S.S.*, 313 Ill. App. 3d at 128. To determine whether a finding of anticipatory neglect is appropriate, the trial court should consider the current care and condition of the child in question and not merely the circumstances that existed at the time of the incident involving the child's sibling. *In re Edricka C.*, 276 Ill. App. 3d 18, 28 (1995).

In *S.S.*, the trial court adjudicated S.S. neglected based on three findings. First, the court found that S.S.'s older sibling, A.T., died as a result of shaken impact/shaken baby syndrome. Second, the court found that S.S.'s mother created a risk of harm to the child by disregarding a DCFS protection plan regarding A.T. Third, the court found that there was a history of domestic violence between S.S.'s parents, thereby creating a risk of harm to the minor. On appeal, both parents challenged the trial court's findings. We ruled that evidence of past sibling abuse by the father that resulted in A.T.'s death was sufficient to establish a finding of neglect concerning S.S.'s father. *S.S.*, 313 Ill. App. 3d at 128.

However, we reversed the judgment of the trial court with respect to the mother. Relevant here, we found that there was no evidence that the mother abused or neglected S.S. or A.T. The mother was not present during A.T.'s abuse, she no longer resided with the children's father, and she completed parenting classes. We also rejected the proposition that there was an official protection plan in place with respect to A.T. or that the mother disregarded such a plan. Finally, we noted that there had been only one documented instance of domestic violence between S.S.'s parents since the minor's birth, that S.S. was not present during the dispute, that the parents attended counseling following the incident, and that the parents were neither married nor living together. *S.S.*, 313 Ill. App. 3d at 128-30.

The facts in this case are akin to those in *S.S.* Notably, there is no evidence that respondent ever neglected Arthur H., Jr. Arthur H., Jr.,

was at Lorraine's home during a DCFS visit in August 2000, at which time the investigator discovered that Earl H. was not wearing his apnea monitor. However, the investigator reported that the other children were watching television and playing and that they were dressed appropriately. Lorraine followed the investigator's instructions and attached the apnea monitor to Earl H. Importantly, the children were not taken into protective custody at this time and the State never alleged neglect on this basis in its petition. Also of significance are the facts that Earl H. is not respondent's child and there was no evidence that respondent was "responsible" for Earl H. as section 18—3 requires. Moreover, Arthur H., Jr., was with respondent and was not present at Lorraine's home during the series of visits by DCFS beginning in February 2001. It was the events occurring during these visits that formed the bases of the State's allegations of neglect.

Citing to *In re B.C.*, 262 Ill. App. 3d 906 (1994), the State argues that the fact that Arthur H., Jr., resided with respondent during the relevant time period is of no consequence because Lorraine could remove the child from respondent's care at any time. In *B.C.*, the respondent was reported to have bitten one of her three children. The State filed a petition for adjudication of wardship alleging that all three of the children were neglected based on an injurious environment. At the temporary custody hearing, there were also allegations of medical neglect with respect to one of the respondent's children. Following a temporary custody hearing regarding the incident, the trial court removed two of the respondent's children from her custody. However, the court dismissed the petition filed on behalf of B.C. because the minor resided with her godmother.

On appeal, the State argued that the respondent's physical abuse and neglect of B.C.'s siblings was sufficient to establish probable cause that the respondent created an environment injurious to B.C.'s welfare. The reviewing court agreed. *B.C.*, 262 Ill. App. 3d at 908. Notably, the court found that although B.C. resided with her godmother, the respondent retained custody of the minor and could remove her at any time, which left her subject to the abuse and neglect endured by her siblings. *B.C.*, 262 Ill. App. 3d at 909.

■ *B.C.* is distinguishable from the present case. First, *B.C.* involved an appeal from a temporary custody hearing regarding whether there was probable cause to remove B.C. from her mother's custody. See 705 ILCS 405/2—10 (West 2000); *In re A.H.*, 195 Ill. 2d 408, 417-18 (2001). It did not involve an adjudicatory hearing to determine whether B.C. was a neglected minor. Second, in *B.C.*, B.C. did not reside with a natural parent. She resided with her godmother. Our research has not disclosed any case law granting godparents

custody rights. Moreover, although there was testimony that Lorraine was free to take Arthur H., Jr., from respondent's home at any time, our finding in this case does not reverse the trial court's findings concerning Lorraine. At the dispositional hearing Lorraine did not contest guardianship and custody. Accordingly, unlike in *B.C.*, there is no possibility that Arthur H., Jr., would be subject to the neglect that resulted in the removal of his siblings. Under these circumstances, we determine that evidence of past sibling neglect by Lorraine was insufficient to establish a finding of neglect with respect to respondent. Therefore, the trial court's finding was against the manifest weight of the evidence.

Respondent also advances a second, independent basis for reversal of the trial court's findings with respect to count I of the petition. He claims that he was not given notice that the State was going to proceed on an allegation that Lorraine failed to attach the apnea monitor to Earl H. He notes that count I of the petition alleged only that Earl H. had a hernia and that Lorraine "had previously failed to follow doctor's treatment and administer medication."

■ Petitions for adjudication of wardship are civil in nature. *In re J.B.*, 312 Ill. App. 3d 1140, 1143 (2000). As such, a party may not succeed on a theory that is not contained in the party's complaint. *J.B.*, 312 Ill. App. 3d at 1143. Our decision in *J.B.* is instructive on this point. In *J.B.*, the State filed a petition for adjudication of wardship alleging that the minors were neglected pursuant to section 2—3(1)(b) of the Act (705 ILCS 405/2—3(1)(b) (West 1998)). Specifically, the petition alleged that the minors were "under 18 years of age and their environment [was] injurious to their welfare; to wit: their mother [the respondent] *** [had] a history of indicated reports for inadequate supervision; on or about 2/12/98, the minors were left at home alone for approximately 1/2 hour." Following an adjudicatory hearing, the trial court adjudicated the minors neglected under section 2—3(1)(d) of the Act (705 ILCS 405/2—3(1)(d) (West 1998)). Ultimately, the minors were made wards of the court. On appeal, we reversed the judgment of the trial court on the basis that the respondent was without notice that the State would proceed under section 2—3(1)(d) of the Act. *J.B.*, 312 Ill. App. 3d at 1145.

■ In the present case, count I of the State's petition alleged that Arthur H., Jr.'s environment was injurious to his welfare "in that the minor's sibling had a hernia approximately 2 1/2 to 3 inches in diameter and the mother had previously failed to follow the doctor's treatment and administer medication, thus placing the minor at risk of harm, pursuant to 705 ILCS 405/2—3(1)(b)." However, the trial court expressly declined to find Earl H. to be a neglected minor on the basis

of his alleged hernia. Rather, the court adjudicated Earl H. neglected on the basis that Lorraine failed to use his apnea monitor, did not follow up with medical care in relation to the apnea monitor, and failed to have Earl H. immunized. However, the petition did not allege that Earl H. was neglected because Lorraine failed to use the apnea monitor or have the children immunized. Because the petition never mentioned the failure to use an apnea monitor or to have the children immunized, we refuse to read these allegations into the petition. We remind the State that it carries the burden of proving allegations of neglect by a preponderance of the evidence. *S.S.*, 313 Ill. App. 3d at 131. Thus, where the State does not present the theory upon which the trial court bases its finding of neglect, the trial court's finding will be reversed. *J.B.*, 312 Ill. App. 3d at 1143-45; *Schultz v. Schultz*, 297 Ill. App. 3d 102, 106 (1998). Had the State wished to pursue a finding of neglect on the bases it argued at trial, it could have easily done so. The State could have amended its petition to conform with the evidence at any time prior to ruling. 705 ILCS 405/2—13(5) (West 2000). Moreover, we find it significant that the State did not remove the children from Lorraine's home in August 2000, when the allegations pertaining to the apnea monitor were initially raised. Accordingly, there exists a second, independent basis for reversal of the trial court's judgment with respect to count I.

The State attempts to distinguish *J.B.* on the basis that in *J.B.* the trial court adjudicated the minors *neglected on a statutory basis separate from the one advanced by the State in its petition. Here, in contrast, the State notes that although the factual basis for the trial court's finding differed from the one advanced by the State in its petition, the statutory basis, injurious environment, was identical. While the State correctly notes this difference between the present case and *J.B.*, the fact remains that the State did not allege failure to use the apnea monitor or to have the children immunized in its petition. As a result, the proof presented at trial did not conform with the pleadings. Thus, the State's attempt to distinguish this case from *J.B.* is of no avail.

### B. Inadequate Supervision

■ Respondent also argues that the trial court's judgment with respect to count II of the petition should be reversed because Arthur H., Jr., was not present in Lorraine's home when Lorraine left the four other children unsupervised. We agree.

Count II of the State's petition alleged as follows:

> "*[Arthur H., Jr.,] is a Neglected Minor in that* he is under 14 years of age whose parent or other person responsible for the

minor's welfare leaves the minor without supervision for an unreasonable period of time without regard for the mental or physical health, safety, or welfare of that minor, in that *the minor's mother left the minor in the care of a 14 year old for an unreasonable amount of time* and the minor's [*sic*] were dirty and wearing dirty clothing that smelled of urine, and the minor's sibling was allowed to drink from a dirty bottle with curdled milk in it, pursuant to 705 ILCS 405/2—3(1)(d)." (Emphasis added.)

As respondent correctly points out, contrary to the allegations of count II, the State presented absolutely no evidence that Arthur H., Jr., was left in the care of the 14-year-old boy as were the other children. Simply put, the State's claim was not supported by any proof. As a result, the trial court's finding was against the manifest weight of the evidence.

The State attempts to salvage its claim by suggesting that the trial court's finding was based on a theory of anticipatory neglect. The State claims that Arthur H., Jr., "spent a substantial amount of time with his mother[,] who was found to have left four of her children unsupervised in poor conditions." While this may be sufficient to support a finding of neglect as to Lorraine, we fail to see how it supports a finding of neglect as to respondent. We reiterate that Arthur H., Jr., was not present when Lorraine left her other four children with the 14-year-old boy under the conditions alleged in the petition and that the State presented absolutely no evidence that respondent ever left Arthur H., Jr., without adequate supervision. Moreover, even if Arthur H., Jr., spent substantial time with Lorraine, and even if Lorraine was free to take Arthur H., Jr., at any time as respondent testified, our ruling in this case does not disturb the trial court's findings with respect to her. Thus, contrary to the State's position, and as we discussed previously, this case is distinguishable from *B.C.* See *B.C.*, 262 Ill. App. 3d at 909 (reversing trial court's decision to dismiss neglect petition as to minor because minor did not reside with respondent; although minor resided with her godmother, the respondent retained custody of the minor and could remove her at any time, thus leaving her subject to the abuse and neglect).

Respondent further asserts that the trial court failed to apply the 15 factors enumerated in section 2—3(1)(d) of the Act (705 ILCS 405/2—3(1)(d)(1) through (1)(d)(15) (West 2000)) to determine whether a minor has been left without adequate supervision. However, given our conclusion above, we do not address this argument.

## C. Disposition

As a final matter, we address the disposition of the minor. Section 2—23 of the Act, which authorizes dispositional orders, provides

that a minor found to be neglected under section 2—3 of the Act may be placed in accordance with section 2—27 of the Act (705 ILCS 405/ 2—27 (West 2000)). Section 2—27 authorizes placing the minor with DCFS if "the court determines and puts in writing the factual basis supporting the determination of whether the parents" are unfit or unable to care for the minor. Generally, section 2—27 of the Act requires both parents to be adjudged unfit or unable to care for the child before placement with DCFS is authorized. *S.S.*, 313 Ill. App. 3d at 132. The rationale for this reading is that a child's natural parents have a superior right of custody as against the world unless they have been found unfit. *S.S.*, 313 Ill. App. 3d at 132. Nevertheless, even custody of a fit parent's child may be placed in a third party upon a showing of good cause or reason. *In re M.K.*, 271 Ill. App. 3d 820, 830 (1995).

We initially point out that although we have found that the trial court erred in adjudicating Arthur H., Jr., a neglected minor as to respondent, the finding of neglect as to Lorraine remains. Thus, for purposes of the Act, Arthur H., Jr., is still a neglected minor. As we note above, the trial court adjudicated the minors wards of the court and determined that it was in the best interests of the children that guardianship be granted to DCFS with the discretion to place the children with a responsible relative or in traditional foster care. With respect to respondent, the trial court stated that it had "concerns" regarding domestic violence and the sufficiency of respondent's housing. Nevertheless, the order of disposition indicates that the trial court did not find respondent to be unfit or unable to care for Arthur H., Jr.

Under the circumstances of this case, we find it appropriate to remand the cause to the trial court for a new dispositional hearing. Our decision is supported principally by the fact that almost two years have passed since Arthur H., Jr., was taken from respondent's home. Given this passage of time, and in light of our decision to reverse the trial court's adjudication of neglect as to respondent, we believe that he should be allowed to demonstrate to the trial court any change in circumstances, *i.e.*, different living arrangements, since the prior dispositional hearing. Parenthetically, we note that the trial court failed to state in writing the factual basis for committing Arthur H., Jr., to DCFS. Because we were able to discern from the report of proceedings the basis for the trial court's finding, we were not required to reverse the trial court's disposition on this basis. Compare *In re M.Z.*, 294 Ill. App. 3d 581, 599-600 (1998) (concluding that lack of either oral or written findings of neglect in record as required by statute necessitated a remand), with *Z.Z.*, 312 Ill. App. 3d at 804 (declining to reverse order of neglect; although trial court made no written findings, trial court explicitly stated its findings on the record).

Nevertheless, we admonish courts to include a written factual basis in their orders. See *Z.Z.*, 312 Ill. App. 3d at 803-04 (discussing writing requirement in relation to section 2—21 of the Act (705 ILCS 405/ 2—21 (West 1998))). The requirement serves an important purpose in that it puts the parent on notice regarding the conditions that led to placing the child with a third party and it allows the parties to chart any progress in correcting those conditions. See 705 ILCS 405/2—28 (West 2000); *M.H.*, 196 Ill. 2d at 366 (discussing purpose of section 2—21's written factual basis requirement).

## III. CONCLUSION

For the aforementioned reasons, we reverse the judgment of the circuit court of Winnebago County and remand the cause for a new dispositional hearing.

Reversed and remanded with directions.

McLAREN, J., concurs.

JUSTICE KAPALA, dissenting:

The majority's first conclusion is that the trial court's finding that Arthur H., Jr., was neglected by respondent was against the manifest weight of the evidence. The majority's second conclusion is that "the finding of neglect as to Lorraine remains." 338 Ill. App. 3d at 1041. I believe that the majority's second conclusion eliminates the need for its first because the trial court does not need to determine that *both* parents engaged in acts or omissions constituting neglect in order to find a minor neglected under the Act. Consequently, the majority's "neglected as to respondent" analysis is misdirected. The basic principle overlooked by the majority is that parents are not adjudicated neglectful at the adjudicatory stage of the proceedings under the Act; rather, minors are adjudicated neglected.

Section 2—3(1) of the Act provides in pertinent part:

"(1) Those who are neglected include:

(a) any minor under 18 years of age who is not receiving the proper or necessary support, education as required by law, or medical or other remedial care recognized under State law as necessary for a minor's well-being, or other care necessary for his or her well-being, including adequate food, clothing and shelter, or who is abandoned by his or her parents or other person responsible for the minor's welfare, except that a minor shall not be considered neglected for the sole reason that the minor's parent or other person responsible for the minor's welfare has left the minor in the care of an adult relative for any period of time; or

(b) any minor under 18 years of age whose environment is injurious to his or her welfare; or

(c) any newborn infant whose blood, urine, or meconium contains any amount of a controlled substance as defined in subsection (f) of Section 102 of the Illinois Controlled Substances Act, as now or hereafter amended, or a metabolite of a controlled substance, with the exception of controlled substances or metabolites of such substances, the presence of which in the newborn infant is the result of medical treatment administered to the mother or the newborn infant; or

(d) any minor under the age of 14 years whose parent or other person responsible for the minor's welfare leaves the minor without supervision for an unreasonable period of time without regard for the mental or physical health, safety, or welfare of that minor." 705 ILCS 405/2—3(1) (West 2000).

Nowhere in the above-quoted section is there a requirement that all parents, or all persons responsible for the welfare of the minor, engage in an act or omission that constitutes neglect.

This fundamental principle has been recognized in the decisions of our appellate court. In *In re Chyna B.*, 331 Ill. App. 3d 591 (2002), respondent-father challenged the trial court's finding of neglect because it was based on the actions of only the other parent. *Chyna B.*, 331 Ill. App. 3d at 593. In rejecting the challenge and concluding that the trial court's finding of neglect was not against the manifest weight of the evidence, the *Chyna B.* court said:

"It was unnecessary for the trial court to find that Chyna B. was neglected on the basis of any action or inaction by respondent father. Chyna B. fit the definition of 'any minor under 18 years of age whose environment is injurious to his or her welfare' (705 ILCS 405/2—3(1)(b) (West 2000)) by reason of respondent mother's actions and respondent father's inactions in failing to correct the conditions of which he was aware. A minor child may be found neglected even though the primary fault for creating the injurious environment rests with one parent." *Chyna B.*, 331 Ill. App. 3d at 596.

This court's holding in *S.S.* "that it is proper for the court to make a neglect finding and adjudicate wardship of a minor as to one parent while not finding neglect as to the other parent" (*S.S.*, 313 Ill. App. 3d at 133) recognizes that a finding of neglect need not be based on the acts or omissions of both parents. The analysis of the evidence of acts or omissions of each parent constituting neglect in *S.S.* was necessary only to determine whether the trial court abused its discretion in entering the dispositional order. In deciding that issue in *S.S.*, we said that section 2—27 of the Act requires both parents to be

adjudicated unfit or unable to care for the child before placement with DCFS is authorized. We concluded that the trial court's finding that respondent-mother neglected the minor was against the manifest weight of the evidence, and, presumably on that basis, we vacated the dispositional order placing the minor under the guardianship of DCFS and ordered that the minor be returned to respondent-mother immediately. *S.S.*, 313 Ill. App. 3d at 133. In my view, the only reason we needed to address the issue of which parent did the neglecting in *S.S.* was to decide if there was evidence to support the conclusion that both parents were unfit, unable, or unwilling to care for the minor. I disagree with any suggestion in *S.S.* that both parents must neglect a minor before the court can adjudicate a minor neglected.

Proof by a preponderance of the evidence that Arthur H., Jr., was neglected by *anyone* responsible for his welfare is all that is required to adjudicate him a minor neglected under the Act. There is no requirement that the State prove acts or omissions constituting neglect on the part of all those persons responsible for the minor's welfare.

The majority's analysis of the trial court's finding of neglect "as to respondent" mischaracterizes respondent's contention on appeal. Respondent contends that the trial court's finding that Arthur H., Jr., was a neglected minor was against the manifest weight of the evidence. He is not contending that the State did not prove an act or omission by him that constituted neglect. Respondent requests that we reverse the trial court's finding and dismiss the petition alleging that Arthur H., Jr., is a neglected minor.

With respect to the sufficiency of the State's evidence as to the allegations of neglect in count I, the majority admits that there was evidence that Lorraine was free to take Arthur H., Jr., back to her home, where the medical neglect of a sibling was occurring, but distinguishes the holding in *B.C.* on three bases: (1) the procedural posture of *B.C.* was a temporary custody hearing, not an adjudicatory hearing; (2) B.C. resided with her godmother while Arthur H., Jr., resided with his natural parent; and (3) Lorraine did not contest guardianship and custody at the dispositional hearing. For the following reasons, I do not believe that these are valid distinctions.

First, the only difference the procedural posture of the two cases makes is the burden of proof the State carries. The fact that the State need only establish probable cause that the minor is an abused, neglected, or dependent minor at a temporary custody hearing (705 ILCS 405/2—10(2) (West 2000)) and must prove neglect, abuse, or dependency by a preponderance of the evidence at an adjudicatory hearing (705 ILCS 405/2—18(1) (West 2000)) does not render unsound the *B.C.* court's reasoning with regard to anticipatory neglect.

Second, the fact that Arthur H., Jr., was in his father's custody when his siblings were being neglected and not in the custody of someone without custodial rights, like the godmother in *B.C.*, is of no consequence. There was uncontradicted evidence that Lorraine could take custody of Arthur H., Jr., at any time. Respondent testified that the custody arrangement was voluntary and that if Lorraine wanted to take Arthur H., Jr., she could. In addition, Lorraine and respondent's mother each testified that Arthur H., Jr., spent time with both parents. What is important is that, like B.C.'s mother, Lorraine could remove Arthur H., Jr., at any time and, therefore, the possibility of removal left Arthur H., Jr., subject to the neglect endured by his siblings. See *B.C.*, 262 Ill. App. 3d at 909.

The last basis upon which the majority distinguishes *B.C.* misses the point. Lorraine's actions at the dispositional hearing do not change the fact that she could put Arthur H., Jr., into an injurious environment at will while the injurious environment existed. Accordingly, I believe that *B.C.* is dispositive and that we should follow its reasoning in this case.

The majority's other basis for reversing the finding of neglect under count I is that respondent was not on notice that the State was going to proceed on an allegation that Lorraine failed to attach the apnea monitor to sibling Earl H. I believe that this theory is contained within the allegations of count I. Count I alleges that Arthur H., Jr.'s environment was injurious to his welfare "in that the minor's sibling had a hernia approximately 2½ to 3 inches in diameter and *the mother had previously failed to follow the doctor's treatment and administer medication, thus putting the minor at risk of harm*, pursuant to 705 ILCS 405/2—3(1)(b)." (Emphasis added.) The emphasized portion of this allegation could be construed fairly to include the failure to keep Earl H. on the apnea monitor. In fact the trial court so found:

> "So the argument that's been made is that Count I doesn't cover the failure to provide other medical care other than for this alleged hernia, and I am finding that it does, that that count pleads a sufficient cause of action to cover the failure to get the treatment for the sleep apnea and also for the failure to get the necessary immunizations."

I also believe that the State proved anticipatory neglect of Arthur H., Jr., as alleged in count II, because *B.C.* controls. Lorraine could put Arthur H., Jr., into her care at will, and the State proved that she failed to supervise his siblings as alleged.

The majority addresses "[a]s a final matter" the dispositional order. 338 Ill. App. 3d at 1040. I agree that the dispositional order in this case is faulty in that it gives custody of Arthur H., Jr., to DCFS

without a finding that respondent is unfit, unable, or unwilling to care for him as is required under section 2—27 of the Act. However, I believe that it is inappropriate to address the propriety of the dispositional order because respondent makes no argument regarding that order. See 188 Ill. 2d R. 341(e)(7) (points not argued on appeal are waived).

For the foregoing reasons, I would affirm the order of the circuit court of Winnebago County. Therefore, I respectfully dissent.