15 June 2000

NO. 4-99-0880

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: the Marriage of 

STEPHEN A. UNDERWOOD,               

Petitioner and Counter-

         respondent-Appellant,

and

KIMBERLY A. UNDERWOOD,

Respondent and Counter-

         petitioner-Appellee.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Champaign County

No. 98D713

Honorable

Arnold F. Blockman,

Judge Presiding.

_________________________________________________________________

JUSTICE McCULLOUGH delivered the opinion of the court:

Petitioner-counterrespondent Stephen A. Underwood (Stephen) appeals from the judgment of the circuit court of Champaign County dissolving his marriage to respondent-

counterpetitioner Kimberly A. Underwood (Kimberly).  The only issue on appeal is whether the award to Kimberly of $250 per month maintenance for six years amounted to an abuse of discretion.  We affirm.  

Only those facts necessary to an understanding of this court's disposition will be discussed.  The factors to be consid

ered in determining an award of maintenance are set forth in sections 504(a)(1) through (a)(12) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a)(1) through (a)(12) (West 1998)).  The trial court's award of maintenance will not be disturbed unless the findings of fact upon which it relies are against the manifest weight of the evidence or the award reflects an abuse of discretion.  
In re Marriage of Charles
, 284 Ill. App. 3d 339, 342, 672 N.E.2d 57, 60 (1996). 

The trial court's findings of fact are unchallenged on appeal.  The marital residence at 204 West Green in Newman, Illinois, had a fair market value of $29,000.  There was a first mortgage that the trial court found to be $28,500, a second mortgage of $7,500, and a debt for monies borrowed for the down payment in the amount of $2,300, leaving a negative value to the residence.

The parties in this case were married on October 15, 1994, and Stephen filed a petition for dissolution of marriage on December 3, 1998, after the parties separated in October 1998.  Stephen testified that his gross wages were $923 biweekly and after deductions, including $197.50 biweekly for housing in a company apartment and $100 per month for health insurance, his pay was $500 biweekly.  Kimberly operated a day-care center from the former marital residence.  The day-care operation had a gross income for eight months in 1998 of $6,300 and net profits of $3,096.  Her gross weekly income was $320.  Kimberly's affidavit indicated that she had as nonmarital assets $28,000 in two bank accounts and unvalued stocks.

The trial court directed the parties to pay the debts that each incurred since the date of separation.  Stephen was to pay debts to International Mail ($275), Bergner's for his credit card ($950), Traveler's Bank ($800), and U.S. Bank ($12,500).  Kimberly's postseparation debts were to Ford Credit ($8,000) and Bergner's for her credit card (amount not shown in the record).  The trial court also distributed specific marital debt as follows: to Stephen, Whirlpool Finance ($580); to Kimberly, Orschelns "Conveniencecard" ($889.07), Sears ($200), J.C. Penney ($200), Capital One ($600), and Mitsubishi Motors Credit of America, Inc. (undeterminable balance due on a leased vehicle that was repos

sessed).  In addition, there was $15,166.06 in remaining marital debts and $12,000 in marital debt that Kimberly had paid from nonmarital funds.  Stephen does not argue that Kimberly's payment of $12,000 of marital debt from her nonmarital assets amounted to a gift to the marital estate and has waived that argument.  177 Ill. 2d R. 341(e)(7).

The trial court found the distribution of marital debts complicated by the fact that Stephen testified he had retained an attorney and paid a $600 fee for the purpose of filing a chapter 7 bankruptcy proceeding.  The trial court found that to achieve a fair and equitable result, Stephen would have to pay maintenance substantially equal to his share of the total marital debt ($18,108.03 calculated as one-half of deficit value of the marital residence, one-half of the marital debts, and one-half of the nonmarital funds that Kimberly previously expended in payment of marital debts).  As a result, the court ordered Stephen to pay Kimberly maintenance of $250 per month for six years.  Implicit in the order, and undisputed by the parties, is that the $15,166.06 marital debt not expressly allocated was split equally, but the court recognized that Kimberly would ultimately be responsible for paying all of it because of Stephen's bankruptcy.

In labeling the monthly payment maintenance, the trial court reviewed the statutory factors set forth in section 504 of the Act (750 ILCS 5/504(a)(1) through (a)(12) (West 1998)), stating:

"The Court finds that the award herein is substantiated by a number of the statutory factors in the maintenance statute.  As to 750 ILCS 5/504[(a)](2), the petitioner certainly has a need for maintenance in that her present income is not nearly enough to pay the existing marital debt and to live.  As to 750 ILCS 5/504[(a)](1), the respondent, after filing bankruptcy, will certainly be able to afford the $250.00 per month.  As to 750 ILCS 5/504[(a)](4), respondent's decision to file bankruptcy certainly impairs petitioner's future earning capacity in that the amount of marital debt still in existence would for the foreseeable future prevent her from earning a decent income and would further deplete her non-marital assets.  Finally, 750 ILCS 5/505[(a)](12) states that the Court may consider 'any other factor that the court expressly finds to be just and equitable.'  The Court considers the respondent's unilat

eral decision to file bankruptcy and its impact on petitioner an equitable factor for the Court to consider.  In addition, the Court also considers as a factor the negative equity in the marital residence awarded to petitioner and the fact that petitioner has expended approximately $12,000.00 in non-marital funds to pay down marital debt since the parties separated (excluding the use of any money for an in-ground pool which would be offset by, at least, some tax implications to petitioner on the maintenance payments)."

Stephen argues that the trial court's ruling amounted to an impermissible characterization of property distribution as maintenance.  However, assumption of a debt can be in the nature of support.  
In re Marriage of Adamson
, 308 Ill. App. 3d 759, 770, 721 N.E.2d 166, 176 (1999).  In 
Adamson
, the payment of a mortgage on the former marital residence over a 140-month period was deemed to be in the nature of support.  
Adamson
, 308 Ill. App. 3d at 770-71, 721 N.E.2d at 177-78. 

The court in 
In re Marriage of Lees
, 224 Ill. App. 3d 691, 694-95, 587 N.E.2d 17, 20 (1992), stated that using mainte

nance as a vehicle to accomplish the payment of debt was inappro

priate where the record shows that the ex-wife's financial condition did not warrant maintenance.  We find the 
Lees
 decision limited to the facts of that case and decline to apply it here.  See 
Prairie Eye Center, Ltd. v. Butler
, 305 Ill. App. 3d 442, 448, 713 N.E.2d 610, 615 (1999) (precedential scope of decision is limited to facts before court).

In this case, the trial court was essentially allocating marital liabilities.  The only significant asset, the marital residence, had a deficit value because of liens.

In awarding maintenance, the trial court looked at the income and property of each party, the needs of each, and their present and future earning capacities.  750 ILCS 5/504(a)(1) through (a)(3) (West 1998).  Issues of maintenance and property distribution are interrelated and considered together.  
Lees
, 224 Ill. App. 3d at 694, 587 N.E.2d at 20. 

In 
In re Marriage of Davis
, 292 Ill. App. 3d 802, 807, 686 N.E.2d 395, 399 (1997), this court stated:

"'It is well settled that marital debts as well as marital assets must be distributed equitably.'  
In re Marriage of Lees
, 224 Ill. App. 3d 691, 693, 587 N.E.2d 17, 19 (1992).  If allocation of debts under the Act has any meaning at all, it must mean that the party allocated the debt is expected to pay it and to do so in a manner that does not expose the other party to liability on the debt."

Also, in 
In re Marriage of Porter
, 229 Ill. App. 3d 697, 702-03, 593 N.E.2d 1138, 1142 (1992), this court stated: 

"'Property settlement obligations to a former spouse are dischargeable in bankruptcy, while obligations to provide maintenance and support are nondischargeable.  (
In re LaFleur
 (1981), 11 B.R. 26, 28-29).  An obligation to hold an ex-wife harmless for certain debts may fall into either category (
In re Massimini
 (1981), 8 B.R. 428, 430), and will be nondischargeable if it is actually in the nature of alimony, maintenance or support.  
In re Massimini
 (1981), 8 B.R. 428, 431; 
In re Miller
 (1981), 8 B.R. 174, 176; 
In re Daiker
 (1980), 5 B.R. 348, 351.

***' 
In re Marriage of Lytle
 (1982), 105 Ill. App. 3d 1095, 1099-1100, 435 N.E.2d 522, 526.

Collier Family Law and the Bankruptcy Code (MB) paragraph 6.04[2] (1991) (hereinaf

ter Collier Family Law) lists the various factors to be considered in making a determi

nation on the question of dischargeability.  First, the intent of the parties or the court in fixing the obligation and the purpose of the obligation in light of the parties' cir

cumstances at the time of the dissolution is important.  (Collier Family Law (MB) ¶6.04[2] (1991).)  The label given is not binding; the obligation must actually be in the nature of maintenance or support.  (Collier Family Law (MB) ¶6.04[3] (1991).)  Probably one of the most important factors in assessing the inten

tion of the parties is the financial situation of the parties at the time the obligation is incurred.  If the spouse would have difficulty in providing for herself (or herself and the children) absent the obligation, the inclina

tion is to treat the payment of a debt as maintenance or support.  Collier Family Law (MB) ¶6.04[4] (1991)."

 
In re Marriage of LaShelle
, 213 Ill. App. 3d 730, 735, 572 N.E.2d 1190, 1193 (1991), provides further support to affirm the trial court's order:

"Whether a debt is nondischargeable as being in the nature of maintenance or support is a matter of Federal, not State, law, but Federal and State courts have concurrent jurisdiction to determine whether section 523(a)(5) excepts such debts from the dis

charge.  (
In re Marriage of Lytle
 (1982), 105 Ill. App. 3d 1095, 1099.)  The label attached to a decree and the language used in the decree are not controlling in determining dischargeability; rather, the court must look to the substance of the order for payment to determine the essential nature of the obliga

tion.  
Lytle
, 105 Ill. App. 3d at 1099-1100." 

In this case, the trial court noted that the distribution of debt, along with Stephen's intention of pursuing bankruptcy on the marital debt, increased Kimberly's needs in relation to her already deficient income to meet her needs.  In discharging his marital debts in bankruptcy, Stephen increases his ability to pay maintenance.  Simply because the amount of maintenance was tied to the amount of marital debt Stephen placed on Kimberly does not render the award of maintenance an abuse of discretion.

We thus affirm the judgment of the circuit court of Champaign County.

Affirmed.

COOK, P.J., and GARMAN, J., concur.