No. 3-07-0068

Filed February 17, 2009

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2009

| | | |
|---|---|---|
| IN RE MARRIAGE OF | ) | Appeal from the Circuit Court of the |
| | ) | Fourteenth Judicial Circuit, |
| KHADIM HUSSAIN AWAN, | ) | Rock Island County, Illinois, |
| | ) | |
| Petitioner-Appellant and | ) | |
| Cross-Appellee, | ) | |
| | ) | |
| and | ) | No. 01-D-693 |
| | ) | |
| ZAHIDA PARVEEN, | ) | |
| | ) | The Honorable |
| Respondent-Appellee and | ) | Lori R. Lefstein, |
| Cross-Appellant. | ) | Judge Presiding. |

JUSTICE McDADE delivered the opinion of the court:

In 2006 the circuit court of Rock Island County entered a judgment of dissolution of the marriage of petitioner, Khadim Hussain Awan, and respondent, Zahida Parveen. The matter is before us on cross-appeals. Petitioner has challenged the award of maintenance, the finding that he dissipated marital assets, the requirement that he pay respondent's attorney fees, and the trial court's allocation of debts and marital assets. Respondent complains that maintenance should have been permanent and that the valuation date of the marital estate was erroneous. For the reasons that follow, we affirm.

BACKGROUND

Khadim Hussain Awan married Zahida Parveen in 1977 in LaHore, Pakistan. They emigrated to the United States in 1979. In 1981 they moved from the Chicagoland area to Champaign for Awan to attend the University of Illinois. During Awan's education, Parveen worked part-time jobs. Awan earned a master's degree in reproduction and gynecology in animals and a doctorate of veterinary medicine in 1983. Parveen had a master's degree in chemistry from Pakistan. After Awan completed his education, the couple moved back to Chicago so that Awan could obtain employment. Between 1983 and 1986 Parveen worked nine months in a retail store. In 1986 Awan began employment with the United States Department of Agriculture and the parties moved to Green Bay, Wisconsin. The Department of Agriculture continues to employ Awan. At Awan's request, Parveen did not work in Green Bay.

In 1988 Awan received a promotion that required the parties to move to Springfield, Illinois. Parveen also did not work in Springfield because, according to her, Awan wanted her to be free to travel with him on business. Parveen asserts that she wanted to continue her education in the United States but Awan refused. In 1991, the Department of Agriculture transferred Awan and the parties moved to Hanover Park, Illinois. In Hanover Park, Parveen worked part-time for her brother in his dental office. She states that she worked only part-time so that she could continue to travel with Awan. Again, she expressed a desire to continue her education and Awan refused. In 1994 the parties moved again, to Moline, because Awan's employer transferred him. Parveen has not worked in Moline.

During the marriage the parties enjoyed a comfortable lifestyle, owned three homes, purchased new vehicles, and took vacations. The parties separated and Parveen moved back into

their Hanover Park residence while Awan remained in Silvis, Illinois. Parveen tried but failed to obtain employment in Hanover Park. She also attempted to continue her education, but the university to which she applied declined to recognize her Pakistani degree and consequently she would have been required to complete two additional years of study. Parveen felt that because of her age she would be unable to utilize a degree by the time she completed her education.

In 2001, Awan filed a petition for dissolution of marriage. The parties separated in 2002. During the proceedings, Parveen alleged that Awan dissipated marital assets in that he incurred credit card debt for a purpose unrelated to the marriage and used the parties' 2001, 2002, and 2003 tax refunds for purposes unrelated to the marriage after September 2001 when the marriage became irretrievably broken. The trial court found that Awan earns a monthly net income of $6,700 and has approximately $4,700 in monthly expenses. Parveen has no income and reasonable monthly expenses totaling approximately $4,000. The court found Parveen more credible on the issue of why she did not work or continue her education prior to the parties' separation. The court found that Awan dissipated $76,000 in marital assets and awarded Parveen half that amount. The court ordered Awan to pay $1,750 per month maintenance and provided that its maintenance award is reviewable in five years. The court ordered Parveen to file a yearly summary of her efforts to find employment. This appeal followed.

ANALYSIS

Temporary Maintenance

Both parties have challenged the maintenance award--Awan denying the propriety of any maintenance and Parveen contending the award should have been permanent.

"[T]he propriety of a maintenance award is within the

discretion of the trial court and the court's decision will not be disturbed absent an abuse of discretion. [Citation.] A trial court abuses its discretion only where no reasonable person would take the view adopted by the trial court. [Citation.] Moreover, the burden is on the party seeking reversal concerning maintenance to show an abuse of discretion." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173, 824 N.E.2d 177, 189 (2005).

Awan first argues that the trial court erred in awarding Parveen reviewable maintenance because "the award of maintenance would leave Parveen with little incentive to procure training or skills to attain self-sufficiency." Awan notes that Parveen "did not stay home and take considerable time out of the job market to care for young children," that she did not work during the marriage, and "only did the cooking" while he did all of the rest of the household chores.

"The power of the court also includes the authority to award time-limited maintenance with a provision for review. [Citation.]" *In re Marriage of Rodriguez*, 359 Ill. App. 3d 307, 312, 834 N.E.2d 71, 75 (2005). With regard to Parveen's contention that maintenance should have been permanent, the trial court's order awarding Parveen temporary maintenance was appropriate. "Rehabilitative maintenance may be granted if the receiving spouse has the present or future ability to become self sufficient or the ability to acquire skills that would allow employability at an appropriate income level, but to do so would require some time." *In re Marriage of Brackett*, 309 Ill. App. 3d 329, 340, 722 N.E.2d 287, 296 (1999). Parveen has a university degree from Pakistan and also has the opportunity to obtain an advanced degree in her field in this country. She does not suffer from a medical condition that prevents her from

working. Accordingly, we find that the trial court did not abuse its discretion in making its maintenance award subject to periodic review to ascertain what efforts Parveen has made to become self-sufficient.

Although Awan complains that the trial court's award provides Parveen little incentive to become self-sufficient, the court has found that "[t]he purpose of a time limit on the award is generally intended to motivate the recipient spouse to take the steps necessary to attain self-sufficiency. [Citation.] At the end of the specified time period, the court determines whether the maintenance award should be extended." *Rodriguez*, 359 Ill. App. 3d at 312, 834 N.E.2d at 75. Awan admits that Parveen must "file a report with the Clerk of the Court summarizing what efforts she has made to find education, employment or training that is commensurate with her health." If Parveen fails to make reasonable efforts to become self-sufficient, Awan may file a motion to terminate Parveen's maintenance.

In *In re Marriage of Callaway*, 150 Ill. App. 3d 712, 716-17, 502 N.E.2d 366, 370 (1986), the trial court awarded the spouse temporary maintenance. On appeal, the court held:

> "if at the end of that time respondent has made no *bona fide* attempt to seek appropriate employment or has refused to accept employment appropriate to her skills or interests, payments should then be terminated. This is consistent with the goal of the Illinois Marriage and Dissolution of Marriage Act to permit the parties to sever economic ties within a reasonable time period and to provide an incentive for a spouse seeking maintenance to acquire the skills necessary to become self-sufficient." *Callaway*, 150 Ill. App. 3d at

716-17, 502 N.E.2d at 370.

The trial court did not abuse its discretion in awarding Parveen temporary maintenance. The temporary maintenance award provides Parveen the incentive to become self-sufficient. If she does not make a reasonable effort to do so, the court may terminate maintenance. If, on the other hand, she fails to secure gainful employment despite reasonable efforts to do so, continuation of maintenance on a temporary or permanent basis would be possible. Neither party has demonstrated that the trial court abused its discretion. Accordingly, the court's order awarding temporary maintenance to Parveen is affirmed.

Date of Valuation of the Marital Estate in Bifurcated Dissolution Proceedings

Parveen argues that the trial court must determine the value of the marital estate as of the date of the final judgment and not as of the date of a preliminary order in bifurcated dissolution proceedings. Here, the court entered an order in March 2004 dissolving the parties' marriage. The court entered its final order in these proceedings on September 25, 2006. The court distributed the marital property based on the property's value in March 2004.

Parveen cites *In re Marriage of Leopando*, 96 Ill. 2d 114, 120, 449 N.E.2d 137, 140 (1983), where the court held that "issues raised in a dissolution-of-marriage case are not separate claims and therefore not appealable under Rule 304(a)." She argues that under *Leopando*, the court's determination of whether grounds for dissolution exist does not represent a separate claim and, therefore, the court's order in March 2004 finding that grounds for dissolution existed was not a final order. She argues that the court's order did not become final until July 2006 and the property must be valued as of that date. See *In re Marriage of Weiler*, 258 Ill. App. 3d 454, 460-61, 629 N.E.2d 1216, 1220 (1994) ("It is well established in Illinois that assets are to be valued at

the time of the dissolution of marriage"); *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 152, 838 N.E.2d 282, 290 (2005) ("Generally, marital assets are to be valued at the time the dissolution judgment is entered").

The trial court relied on the courts' decisions in *In re Marriage of Hale*, 278 Ill. App. 3d 53, 56, 662 N.E.2d 180, 183 (1996), and *In re Marriage of Brooks*, 138 Ill. App. 3d 252, 486 N.E.2d 267 (1985), and correctly found that "property should be valued on the date the marriage is dissolved." We hold that the court dissolved the parties' marriage by its order in March 2004. Therefore the marital property should be valued on that date. Section 401(b) of the Dissolution Act explicitly authorizes the court to "enter a judgment for dissolution that reserves *** issues *** upon (i) agreement of the parties, or (ii) motion of either party." 750 ILCS 5/401(b) (West 2006). Parveen agreed to the bifurcated proceedings and dissolution judgment. Section 401(b) places no restrictions on the scope or effect of a dissolution judgment that reserves issues.

The supreme court has recognized that the language in section 401(b) authorizing bifurcated dissolution judgments initially reflected the legislature's attempt to "validate *** judgments of dissolution" entered in bifurcated proceedings before the legislature expressly gave the court "the discretion to enter a judgment of dissolution while reserving the remaining issues." *In re Marriage of Bogan*, 116 Ill. 2d 72, 78, 506 N.E.2d 1243, 1245-46 (1986). Parveen's argument would require this court to hold that the March 2004 dissolution judgment is invalid and did not actually dissolve the parties' marriage. That construction of the statute is contrary to the intent of the legislature in adopting section 401(b). We may not construe a statute in a manner that frustrates the legislature's intent in adopting legislation. See *In re M.T.*, 221 Ill. 2d 517, 525, 852 N.E.2d 792, 797 (2006) (rejecting parties' construction of a statute that would "frustrate

both the intent and the spirit of the legislation").

The authority to enter a valid dissolution judgment while reserving ancillary issues for future determination reflects sound policy decisions. See *In re Marriage of Cohn*, 93 Ill. 2d 190, 199, 443 N.E.2d 541, 545 (1982) (sound policy reasons will justify bifurcating a judgment). The entry of a valid dissolution judgment reserving other issues permits the parties to avoid complications that may otherwise arise, including "'the supervening rights of third parties, including subsequent spouses'" (*Bogan*, 116 Ill. 2d at 80, 506 N.E.2d at 1246, quoting *Cohn*, 93 Ill. 2d at 199, 443 N.E.2d at 545), or, as in this case, questions concerning the "'treatment [of] property accumulated [after the parties separate but before] the final disposition of property rights'" (*Bogan*, 116 Ill. 2d at 80, 506 N.E.2d at 1246, quoting *Cohn*, 93 Ill. 2d at 199, 443 N.E.2d at 1246).

Accordingly, we hold that a dissolution judgment in bifurcated proceedings is valid and that the reservation of issues does not render the judgment of dissolution nonfinal. The trial court properly determined that the marital property should be valued as of its March 2004 dissolution judgment. However, in its September 2006 order, the trial court held that it would value the real estate based upon the most recent values the parties presented during subsequent proceedings. The trial court's judgment valuing marital property as of the date of the dissolution in March 2004 is affirmed. The trial court's order that "[t]he real estate will be valued based upon the most recent values present[ed] by the parties at the time of the trial" is reversed. We remand to the trial court to value the real estate as of a date as close as practicable to the date of its March 2004 dissolution judgment and to distribute the real estate accordingly. See *In re Marriage of Asher-Goettler*, 378 Ill. App. 3d 1023, 1033, 883 N.E.2d 564, 572 (2008).

-8-

Allocation of Marital Property and Debt

Next, Awan argues the trial court abused its discretion in allocating the marital property and certain marital debt. Awan complains that the court awarded Parveen "an unfair larger amount of the property." Specifically, the court awarded Parveen the proceeds of the sale of the parties' property in Moline as well has the marital residence, while the court ordered him to pay all of the marital debts, including alleged loans from Parveen's brothers to Parveen, and a portion of her attorney fees. Awan complains that since the parties' separation Parveen has not sought employment or to further her education, and that Parveen made no contribution to the marital assets and "just chose not to work."

Awan also claims that the trial court erroneously determined that money Parveen received from her brothers during the dissolution proceedings was marital debt. Parveen's brother Zahid produced a hand-written document dated February 27, 2003, titled "Loan Agreement" stating that Zahid loaned Parveen $37,000 to be repaid at the conclusion of her dissolution. The document did not state terms, an interest rate, or an exact date for repayment. Parveen's brother Khalid produced a hand-written document dated June 20, 2003, titled "Loan Agreement" stating that he loaned Parveen $16,000 for her expenses between April 2003 and July 2003, but the document did not contain any promise to repay the money. Parveen produced a hand-written document dated August 16, 2003, titled "Loan Agreement" stating that Parveen's brother Khalid loaned her $15,000 to be repaid at the conclusion of the dissolution proceedings. The document did not state an interest rate. Parveen also produced an undated, hand-written document titled "Loan Agreement" that stated Parveen's brother Khalid loaned Parveen money between April 2004 and August 2004 to be repaid at the conclusion of the dissolution. Khalid testified that he gave

Parveen several checks between August 2003 and July 2005 totaling $21,700. Zahid testified he had already given Parveen the checks when he wrote the "Loan Agreement."

Awan argues the money did not create a marital debt because (a) the parties (Parveen and her brothers) failed to enter into a valid contract for a loan or, alternatively, (b) Parveen's brothers were not in fact loaning money to Parveen but were paying her to care for their sick mother. Awan argues the documents titled "Loan Agreement" were so indefinite in their terms that they cannot be considered valid contracts. He also asserts that the parties executed the documents only after Parveen received the money and in anticipation of her receiving a settlement from the dissolution proceedings, seemingly as an assertion that the money Parveen received from her brothers was actually intended to be gifts but the parties later attempted to cast them as loans.

Parveen cites *In re Marriage of Wolf*, 180 Ill. App. 3d 998, 1007, 536 N.E.2d 792, 798 (1989), for the proposition that "[i]f an examination of the record reveals that the trial court was aware of the requirements of section 503(d), and its disposition of marital property was consistent with section 503(d), then an abuse of discretion has not occurred." Parveen responds the trial court did not abuse its discretion because the record reflects that the court considered all of the factors listed in section 503 of the Dissolution Act.

Section 503 reads, in pertinent part, as follows:

> "(d) In a proceeding for dissolution of marriage or
> declaration of invalidity of marriage, *** the court shall assign each
> spouse's non-marital property to that spouse. It also shall divide
> > the marital property without regard to
> > marital misconduct in just proportions

-10-

considering all relevant factors, including:

(1) the contribution of each party to the acquisition, preservation, or increase or decrease in value of the marital or non-marital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the dissipation by each party of the marital or non-marital property;

(3) the value of the property assigned to each spouse;

(4) the duration of the marriage;

(5) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

* * *;

(10) whether the apportionment is in lieu of or in addition to maintenance;

(11) the reasonable opportunity of each spouse for future acquisition of capital assets and income; and

(12) the tax consequences of the property division upon the respective economic circumstances of the parties."

750 ILCS 5/503(d) (West 2008).

"'It is well settled that marital debts as well as marital assets must be distributed equitably.' [Citation.]" *In re Marriage of Underwood*, 314 Ill. App. 3d 325, 328, 731 N.E.2d 1003 (2000), quoting *In re Marriage of Davis*, 292 Ill. App. 3d 802, 807, 686 N.E.2d 395, 397

-11-

(1997). An equitable distribution "does not require mathematical equality" and "[w]e will not disturb a trial court's division of marital assets unless it has clearly abused its discretion." *In re Marriage of Thornley*, 361 Ill. App. 3d 1067, 1071, 838 N.E.2d 981, 985 (2005). "An abuse occurs when no reasonable person would take the view adopted by the trial court." *In re Marriage of Nelson*, 297 Ill. App. 3d 651, 658, 698 N.E.2d 1084, 1090 (1998).

> "When a court reviews the parties' marital assets and liabilities, transfers of money during the marriage from the parents of one of the parties are viewed with great skepticism because of the incentive for the parents and that spouse to conform their testimony at the dissolution proceeding so as to disadvantage the other spouse." *In re Marriage of Blazis*, 261 Ill. App. 3d 855, 868, 634 N.E.2d 1295, 1304 (1994).

Although the transfers between Parveen and her brothers are distinguishable because they are not presumed to be gifts, as are transfers between parents and their children (see *In re Marriage of Marcello*, 247 Ill. App. 3d 304, 314, 617 N.E.2d 289, 296 (1993) ("In Illinois, a transfer from parent to child is presumed to be a gift")), we adopt a view similar to *Blazis* with regard to the transfers of money from Parveen's brothers. The *Blazis* court noted that "[w]hen the transferred funds no longer exist, classifying the transfers as marital debt provides an advantage to the spouse whose parents made the transfer and would likely reduce the amount of marital assets awarded to the other spouse." *Blazis*, 261 Ill. App. 3d at 868-69, 634 N.E.2d at 1304. A similar advantage to Parveen exists here, where allocating the transfers from Parveen's brothers as marital debt would reduce the amount of marital assets awarded to Awan.

However, "[a] court of review should not second-guess the trial court's factual findings on the validity of a debt when that finding is based upon the trial court's assessment of the credibility of witnesses and the weight it gives to their testimony *** unless the trial court's findings are against the manifest weight of the evidence." *Blazis*, 261 Ill. App. 3d at 869, 634 N.E.2d at 1304.

The trial court found that Parveen

> "presented evidence showing that prior to the parties' divorce [in March 2004,] two of her brothers loaned her substantial sums of money. I find that prior to dissolution, M. Khalid loaned [Parveen] $16,000 and C.M. Khalid loaned [Parveen] $20,000. These loans were established by the testimony of [Parveen] and her brothers, copies of the brothers' checks, as well as [Parveen's] records showing the money being deposited into her bank account."

In determining that the funds Parveen received from her brothers were loans, the court considered that Awan failed to comply with the court's orders regarding maintenance and other financial obligations, including an order that Awan pay the mortgage on the parties' Hanover Park residence. Awan admitted making only one maintenance payment. Parveen "kept the Hanover Park mortgage current, paying $1,053.00 pr month. She also paid the majority of taxes on the property." The court noted that Parveen's "difficulty in maintaining an attorney *** also contributed to the accrual of her debt."

Awan offers no evidentiary support for his purely speculative argument that the funds Parveen received from her brothers were in fact payment for Parveen's care of their mother. The trial court heard testimony from Parveen and her brothers, and its determination that the transfers

-13-

constitute a debt is based on its assessment of the witnesses' credibility as well as the written documentation. Awan points to no facts to dispute the trial court's findings. Accordingly, we conclude that the record does not clearly demonstrate that no reasonable person would take the view adopted by the trial court.

## Attorney Fees

Next, with regard to the trial court's order that Awan pay a portion of Parveen's attorney fees, Awan argues that Parveen failed to prove that she is unable to pay her own attorney fees and cannot do so in light of the court's allegedly inequitable distribution of the marital assets. He asserts, without factual support, that ordering Parveen to pay her own attorney fees would not strip her of her means of support. Although he notes that Parveen hired an attorney from Chicago and therefore incurred fees for his driving time, he admits that it was her right to hire an attorney of her choosing. Nonetheless Parveen points out that her attorney's driving time was not included in her request for fees. Substantively Parveen responds the trial court found that the fees she requested were reasonable and the court properly considered the property distribution, maintenance award, debt allocation, and the parties' relative financial circumstances, in granting her request for fees. "[T]he trial court's decision to award fees is a matter of discretion and will not be disturbed on appeal absent an abuse of discretion." *In re Marriage of Nesbitt*, 377 Ill. App. 3d 649, 656, 879 N.E.2d 445, 451 (2007).

The trial court found that Parveen incurred $9,682.50 in attorney fees. The trial court's order makes clear that it considered the relative financial resources of the parties. Awan admits that Parveen is not employed. Even were the court to consider the distribution of the marital estate "inequitable" as Awan asserts, the court has held that where the record shows that the

-14-

spouse receiving attorney fees has the ability to support himself or herself but would exhaust a large portion of her assets to pay all of the fees, an order requiring contribution toward that spouse's attorney fees is not an abuse of discretion. See *In re Marriage of Smith*, 162 Ill. App. 3d 792, 800, 516 N.E.2d 777, 783 (1987). Assuming, *arguendo*, the trial court's property division provides Parveen with the necessary resources to support herself, she would be required to exhaust a large portion of those assets to pay her fees. Moreover, the court only awarded Parveen the fees she incurred *after* its March 2004 order. The parties began dissolution proceedings in 2001.

We find that the trial court did not abuse its discretion in ordering Awan to pay a portion of Parveen's attorney fees and, accordingly, affirm the trial court's order.

### Dissipation of Marital Assets

"Dissipation refers to a spouse's use of marital property for his or her sole benefit for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown. [Citation.] *** 'The spouse charged with dissipation of marital funds has the burden of showing, by clear and specific evidence, how the marital funds were spent.' [Citation.] If the expenditures are not documented adequately by the party charged with dissipation, courts will affirm a finding of dissipation. [Citation.] General and vague statements that funds were spent on marital expenses or to pay bills are inadequate to avoid a finding of dissipation." *In re Marriage of Hubbs*, 363 Ill. App. 3d 696, 700,

-15-

843 N.E.2d 478, 483 (2006).

Awan argues the trial court erroneously found that he dissipated marital assets because Parveen failed to adduce evidence of when the marriage became irretrievably broken or evidence of the exact amount allegedly dissipated. Alternatively Awan argues that, based on his admission to his use of marital funds totaling $9,899 to pay a friend's car debt, to pay the friend's car insurance, and for the transfer of title to the car and a car payment, and to pay one month's rent for his friend, the most the court could have found he dissipated was $9,899. Consequently, he argues, Parveen would only be entitled to an award for dissipation of $4,949.50 instead of the $38,000 the court awarded her. Further, Awan argues that the award to Parveen of the proceeds of the sale of their property ($38,558) is sufficient compensation for his dissipation of marital assets.

We begin by stating that the trial court's finding that Awan dissipated marital assets is appropriate even though Awan did not use the funds for himself. "A finding of dissipation is possible even though the dissipating party did not derive personal benefit from the dissipation of the asset." *In re Marriage of Carter*, 317 Ill. App. 3d 546, 552, 740 N.E.2d 82, 86 (2000). Next, Awan seems to argue that Parveen is only entitled to an award of half of the amount that the court found that he dissipated from the marital estate. Awan's contention in that regard is erroneous. "[T]he trial court is not required to award the other spouse cash or property equal to half of the amount dissipated." *In re Marriage of Tabassum*, 377 Ill. App. 3d 761, 780, 881 N.E.2d 396, 414 (2007), citing *In re Marriage of Jerome,* 255 Ill. App. 3d 374, 394, 625 N.E.2d 1195 (1994).

Regardless, in this case, the trial court found that Awan dissipated $76,000 in marital

-16-

assets and awarded half of that amount to Parveen. The court's findings are not against the manifest weight of the evidence. First, Awan admitted that the marriage was irretrievably broken as of September 2001. The trial court made specific findings of fact. The court found that Parveen presented evidence that Awan "charged approximately $20,000 on his *** credit card, purchased a car for his girlfriend for about $16,000, and wrote checks for approximately $18,000. Many checks were written payable to cash." The court further found that Awan kept the parties' tax refunds for tax years 2001 through 2003, totaling $22,028, for himself.

After Parveen presented her evidence, the burden shifted to Awan to show how he used those funds. See *In re Marriage of Manker*, 375 Ill. App. 3d 465, 477, 874 N.E.2d 880, 890 (2007) ("once a *prima facie* case for dissipation has been made, the burden shifts to the party charged with dissipation to prove by clear and specific evidence how the funds were spent"). The trial court again made specific findings of fact with regard to Awan's use of the disputed funds. The court found that Awan "admitted that certain sums were used for purposes unrelated to the parties' marriage." Specifically, $1,800 to pay expenses for a girlfriend, $16,000 to purchase a car for the girlfriend, $4,000 for travel to Pakistan, and items charged on his credit card for his girlfriend. Awan also wrote to Parveen "acknowledging that he spent money to help his girlfriend and requesting 'permission to spend some more money to meet her desperate needs.'" The trial court found that Awan "was vague in describing what the other sums were used for."

If Awan fails to meet his burden to prove how the funds were spent, the trial court is required to find that Awan dissipated the marital estate. *Tabassum*, 377 Ill. App. 3d at 779, 881 N.E.2d at 413, citing *Hubbs*, 363 Ill. App. 3d at 701-02, 843 N.E.2d at 484 ("If the spouse fails to meet this burden, the trial court is required to find dissipation"). We review a trial court's

-17-

factual findings on dissipation under the manifest weight of the evidence standard. *Tabassum*, 377 Ill. App. 3d at 779, 881 N.E.2d at 413. "A finding is against the manifest weight of the evidence if a review of the record clearly demonstrates that the proper result is the one opposite that reached by the trial court." *In re T.W.*, 313 Ill. App. 3d 890, 892, 731 N.E.2d 982, 984 (2000).

The trial court held that Awan had "not satisfied his burden. He has failed to show by clear and specific evidence how the funds were spent or that he did not spend these funds for his own benefit." The court's finding that Awan failed to meet his burden to prove that he used the marital funds for a purpose related to the marriage is not against the manifest weight of the evidence. First, the court has specifically found that expenses for vacations can constitute dissipation. *Tabassum*, 377 Ill. App. 3d at 780, 881 N.E.2d at 414, citing *In re Marriage of Murphy,* 259 Ill. App. 3d 336, 339, 631 N.E.2d 893, 895 (1994); *In re Marriage of Osborn,* 206 Ill. App. 3d 588, 600-01, 564 N.E.2d 1325 (1990). Next, Awan admitted dissipating at least $21,800 in marital assets. Awan failed to prove how he spent the remaining $54,200, including $22,028 in joint tax returns. Awan has not pointed this court to *any* evidence in the record of how he spent those funds or that he made those expenditures for a purpose related to the marriage. Therefore this court cannot conclude that the record clearly demonstrates that the opposite result is the proper one.

We also reject Awan's argument that the trial court's order awarding Parveen $38,000 in proceeds from the sale of the parties' property is sufficient compensation for his dissipation of the marital estate. Awan essentially asks this court to recast the award of the proceeds of the sale as a charge against his share of the marital estate to compensate Parveen for his dissipation.

-18-

Although the court has found that when "a party has dissipated marital assets, the court may charge the amount dissipated against his or her share of the marital property so as to compensate the other party" (*In re Marriage of Partyka*, 158 Ill. App. 3d 545, 550, 511 N.E.2d 676, 680 (1987)), the trial court is not required to do so. *Tabassum*, 377 Ill. App. 3d at 780, 881 N.E.2d at 414, citing *Murphy*, 259 Ill. App. 3d at 340-41, 631 N.E.2d at 895 (where dissipation of $7,800 did not materially affect the division of property, trial court did not abuse its discretion by not charging that amount against the husband's share of marital property).

Accordingly, we affirm the trial court's order finding that Awan dissipated the marital estate and compensating Parveen.

CONCLUSION

For the foregoing reasons, the trial court's order awarding Parveen temporary maintenance and ordering Awan to pay a portion of her attorney fees is affirmed. The court's orders valuing the parties' marital assets as of March 2004, determining the amount of marital debt as of the court's March 2004 order, and determining what amount, if any, Awan dissipated from the marital estate before the March 2004 order, are affirmed. The court's order valuing the real estate based on the values the parties presented at trial is reversed, and the cause remanded for further proceedings.

Affirmed in part and reversed in part; cause remanded.

O'BRIEN, P.J., concurs.

JUSTICE WRIGHT, specially concurring:

I agree with both the result and analysis in this case. However, I specially concur because I do not believe that the parties seriously contemplated the difficulties a bifurcated

-19-

judgment would present. This lack of foresight put the trial judge in a most difficult position when the hearing on the second half issues concluded nearly 18 months later.

I specially concur because the judge's decision was thorough, well reasoned, and demonstrated the court's best efforts to fairly resolve issues created by the bifurcated judgment that the parties agreed to embrace. In spite of the court's equitable approach, the order must be reversed in part.

A bifurcated judgment is not appropriate in all dissolution cases. Counsel must approach an agreed request with great restraint. A bifurcated judgment should not be viewed as a solution to appease clients who are anxious to end a marriage in order to advance other significant business or personal endeavors. Nor should a bifurcated judgment proceeding be used as a means to put a difficult dissolution on the back burner, to be addressed on another day. A bifurcated approach may relieve some personal stress on the former spouses, but may inevitably create other more difficult property issues for the trial judge to resolve when a contested hearing cannot be immediately scheduled due to court and counsel's busy calendars.

Here, on December 11, 2003, the trial judge specifically declined petitioner's request to dissolve the marriage prior to a resolution of all property issues. The court's decision should be commended. The request to dissolve the marriage on December 11, 2003, was not made by agreement of both parties and appropriate circumstances for bifurcation did not exist as mandated by the statute.

On February 2, 2004, the parties renewed the request to proceed in a bifurcated manner, but this time agreed to a bifurcated judgment. Petitioner's counsel submitted a written order for the judge's signature stating, in part,

"'... the marriage is dissolved and the bonds of matrimony are set aside and each of the parties are restored to all the rights and privileges of unmarried persons', but continuing all other second half proceedings in accordance with the case management conference order."

Apparently relying on the court's written minute entry, petitioner's counsel then recorded and filed a copy of the certificate of dissolution of marriage with the circuit clerk on February 2, 2004, the same date as the agreed termination of the marriage.

Even though the certificate of dissolution was recorded, counsel did not present an agreed order for the judge's signature until nearly six weeks later. Upon receipt, the trial judge promptly signed the order on March 26, 2004.

Shortly thereafter, on June 29, 2004, attorney for petitioner appeared before the judge to make a special request for the next available full day of the court's time to hear the second half issues. The court allowed the request. On July 15, 2004, petitioner's counsel sent a notice for a full day hearing on the second half issues scheduled for October 1, 2004. This hearing would have occurred just over six months after the trial judge's order dissolving the marriage on March 26, 2004.

However, the difficulties in this case began when the hearing did not take place October 1, 2004. The parties agreed to reschedule the matter for another full day setting to take place on December 22, 2004. On December 10, 2004, petitioner's attorney once again filed a motion to continue the hearing on the grounds that discovery had not been completed. On December 16, 2004, the court entered the following minute entry:

"Counsel by phone. Motion to continue granted over resp. objection.

Case to be reset ASAP. This will be a must go trial date. LRL"

In spite of the docket entry set forth above, the parties did not address the court to request a trial date until April 18, 2005. Once again, the court cleared the court schedule and set a full day hearing for July 22, 2005.

On July 12, 2005, again, petitioner's counsel filed a motion to continue the one day trial on the grounds that discovery was still not completed. Over the respondent's objection, the court continued the hearing. On August 9, 2005, petitioner's attorney sent notice re-scheduling the hearing for October 5, 2005, nearly one year to the day *after* the originally scheduled second half hearing date. On October 5, 2005, the hearing began, as scheduled but was not completed. On December 19, 2005, the parties appeared and completed the second half hearing.

By selecting the most recent value for the real estate as presented by the parties at trial, the trial court created an equitable solution to the valuation issues arising from the long delay between the judgment and the second half proceedings. However, the fluctuation in value was the obligation of the parties to consider; not the obligation of the trial judge to resolve in spite of her best efforts to be fair to both former spouses.

Absent an express agreement that another date will control valuation, the parties could have avoided many difficulties in this case by recognizing the court would be required, in spite of the consequences to the parties, to measure all property values as of the date the former spouses were free to remarry, that being the date of the judgment of dissolution.

For these reasons, I specially concur.