**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200474-U

Order filed February 8, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| ANTHONY JOHN YVANAUSKAS, | ) ) | |
| Petitioner-Appellee, | ) ) | Appeal No. 3-20-0474 Circuit No. 18-D-1109 |
| and | ) ) | |
| CHERYL A. YVANAUSKAS, | ) ) | Honorable David Garcia, |
| Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE HAUPTMAN delivered the judgment of the court.
Presiding Justice O'Brien and Justice McDade concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court's finding that respondent failed to prove petitioner dissipated marital assets under section 503(d)(2) of the Illinois Marriage and Dissolution of Marriage Act, after a final hearing on a petition and counterpetition for dissolution of marriage, was not against the manifest weight of the evidence.

¶ 2     Petitioner, Anthony John Yvanauskas, and respondent, Cheryl A. Yvanauskas, filed a petition and counterpetition for dissolution of marriage, respectively. After a final hearing, the circuit court dissolved the parties' marriage and found, *inter alia*, Cheryl failed to prove that Anthony dissipated marital assets under section 503(d)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act). 750 ILCS 5/503(d)(2) (West 2020). Cheryl appeals.

¶ 3                              I. BACKGROUND

¶ 4        The parties were married on September 1, 1991. In either early-2012 or early-2013, they

permanently separated. Five or six years later, on July 2, 2018, Anthony filed a petition for

dissolution of marriage. Anthony was unable to locate Cheryl, so he was granted leave to

effectuate service of process on Cheryl by publication. Cheryl's attorney subsequently entered

her appearance in the circuit court. On January 23, 2019, Cheryl filed a counterpetition for

dissolution of marriage.

¶ 5        Thereafter, the parties participated in discovery, during which time Cheryl filed a motion

to compel discovery disclosures related to, among other things, any 401(k) plans, annuities, and

investments. Cheryl also filed a motion for discovery sanctions, arguing Anthony tendered

incomplete and misleading responses that impeded her right to identify marital assets. The circuit

court ordered Anthony to tender documents and produce the requested disclosures to Cheryl.

¶ 6        On January 24, 2020, Anthony filed an amended financial statement. Anthony stated he

received $2323.75 in pension and other retirement benefits and $1535.91 from social security.

He did not indicate any income from an annuity. Anthony listed one bank account, namely, a

checking account with a balance of $6228.38. In the section pertaining to retirement benefits,

which included pension plans, annuities, IRAs, and 401(k) plans, Anthony indicated he had a

"Railroad Retirement Board" retirement plan with an "Unknown" value and account balance.

¶ 7        That same day, January 24, 2020, Anthony filed an affidavit of compliance relating to

Cheryl's request for production of documents. Anthony attested that his response to Cheryl's

request for production of documents, which included his tax returns, amended financial

statement, and living trust documents, was complete. Anthony also filed an affidavit of

completeness relating to his responses to Cheryl's request for interrogatories. Anthony attested that those responses, which were produced on July 15, 2019, were complete.

¶ 8    On July 1, 2020, a hearing was held on the status of discovery. Despite prior discovery disputes, the case was scheduled for a final hearing on September 28, 2020. On July 27, 2020, Cheryl filed a notice of intent to claim dissipation under section 503. In that notice, Cheryl stated the parties' marriage began to irretrievably break down in April 2012. Between March 5, 2014, and April 2, 2019, Anthony allegedly dissipated $401,711.39 in marital retirement funds. Cheryl discovered the dissipation of retirement funds after reviewing bank documents disclosed by Anthony on September 18, 2019. Those bank documents do not appear in the record on appeal.

¶ 9    Cheryl attached an exhibit 1 to the notice of intent to claim dissipation, which was a tabulation of the assets allegedly dissipated by Anthony. Cheryl indicated Anthony dissipated "$325,000.00 (estimate)" from "Husband's 401k assets" on an "unknown" date. Cheryl indicated Anthony dissipated $51,511.39 by making 13 "Unknown retirement investment withdrawals [that were] deposited into Husband's Checking Account xxxxxx7552" in 2014, 2015, 2016, 2018, and 2019. The "Unknown retirement investment withdrawals" were related to "New York Life NYL ANN" or "Integrity." Cheryl indicated Anthony dissipated $25,200 by making 23 "Web transfers into Husband's checking account xxxxxx7552," related to "Unknown bank account #xxxxxx5438 assets," in 2016, 2017, and 2018. Exhibit 1 is depicted below.

3

NOTICE OF INTENT TO CLAIM DISSIPATION TABULATION

| ITEMS dissipated | DATE dissipation occurred | AMOUNT of funds dissipated | SOURCE of funds dissipated |
|---|---|---|---|
| Husband's 401k plan | unknown | $325,000.00 (estimate) | Husband's 401k assets |
| Unknown retirement investment withdrawn deposited into Husband's Checking Account xxxxx7862 | | | |
| **2014** | | | |
| | March 5 | $1,700.00 | New York Life NYL ANN Mr Anthony J YVAVNA(US)... |
| | June 4 | 1,700.00 | " |
| | September 3 | 1,700.00 | " |
| | December 3 | 1,700.00 | " |
| **2015** | | | |
| | March 4 | 1,700.00 | " |
| | June 3 | 1,700.00 | " |
| | September 3 | 1,700.00 | " |
| | December 3 | 1,700.00 | " |
| **2016** | | | |
| | March 3 | 1,700.00 | " |
| | April 29 | 20,615.34 | " |
| | June 3 | 1,700.00 | " |
| **2018** | | | |
| | December 13 | 2,895.05 | Integrity |
| **2019** | | | |
| | April 2 | 10,000.00 | Integrity |

| ITEMS dissipated | DATE dissipation occurred | AMOUNT of funds dissipated | SOURCE of funds dissipated |
|---|---|---|---|
| Web transfers into Husband's checking account xxxxx7862 | | | |
| **2016** | | | |
| | July 7 | 1,500.00 | Unknown bank account #xxxxxx5438 assets |
| | August 2 | 1,000.00 | |
| | September 1 | 1,500.00 | |
| | October 3 | 1,000.00 | |
| | November 3 | 1,000.00 | |
| | December 1 | 1,000.00 | |
| **2017** | | | |
| | January 3 | 1,000.00 | |
| | February 1 | 1,000.00 | |
| | March 1 | 1,000.00 | |
| | April 3 | 1,000.00 | |
| | May 3 | 1,000.00 | |
| | July 3 | 1,000.00 | |
| | August 7 | 1,000.00 | |
| | September 7 | 1,000.00 | |
| | October 5 | 1,000.00 | |
| | November 3 | 1,000.00 | |
| | December 7 | 1,000.00 | |
| **2018** | | | |
| | January 19 | 1,000.00 | |
| | February 9 | 1,000.00 | |
| | March 1 | 1,000.00 | |
| | March 7 | 2,000.00 | |
| | May 2 | 1,000.00 | |
| | July 3 | 1,400.00 | |

Cheryl's Exhibit 1

¶ 10    On September 28, 2020, the parties appeared in the circuit court for a final hearing. At the outset, Cheryl's attorney made an oral motion to exclude Anthony's testimony on the claim of dissipation. Cheryl's attorney argued, "my client has subpoenaed everything within her financial means to obtain *** [Anthony's] full retirement assets," yet Anthony failed to completely tender documentation related to his retirement investments. Anthony's attorney did not object to Anthony being excluded from testifying on the claim of dissipation.

¶ 11    Cheryl's mother, Roberta Martin, testified at the final hearing. Roberta was asked if she knew of retirement benefits, other than a railroad pension, possessed by Anthony.[1] Roberta answered, "at one time *** [Anthony] told [me] while we were visiting and we were talking about money *** 'you'll never have to worry about Cheryl because I have her on my 401K.' "

¶ 12    Cheryl also testified at the final hearing. Cheryl stated exhibit 1 contained true and correct information. When asked how she estimated the $325,000 dissipated from Anthony's 401(k) plan, Cheryl stated: "he had a 401K plan and I knew how much was in it when I left and through the years, so I know over time how much he gained there now so it's an estimate."

---

[1]Anthony's "Railroad Retirement Board" retirement plan is not at issue on appeal.

Cheryl knew Anthony had an annuity with New York Life Insurance, but she did not remember the value of that annuity. Cheryl stated documents related to the annuity and 401(k) plan were not produced by Anthony during discovery. Cheryl was not aware Anthony had investments with "Integrity." She discovered those investments only after receiving Anthony's bank statements.

¶ 13    On cross-examination, Cheryl was asked if she had proof to support her claim that Anthony dissipated $325,000 from a 401(k) plan. Cheryl answered, "No[,] [i]t was known how much *** had been in this over the years and *** what had been accrued in there." When asked if she had documentation related to a 401(k) plan, Cheryl stated "no" because Anthony "would not tender any." Cheryl testified that she prepared exhibit 1. Cheryl stated she had documentation "showing Integrity *** [and] New York Life."

¶ 14    During closing arguments, Anthony's attorney argued Cheryl had not "come close to proving dissipation." In his view, "[t]he only thing *** [Cheryl] presented [on that claim] was a ledger that Cheryl *** put together with her own writing." In response, Cheryl's attorney argued, "the court record will show *** [Anthony] has hid everything with *** retirement, retirement benefits, assets *** and he has refused even when the court ordered him to turn the documents over." Further, Cheryl's attorney argued Cheryl "testified that everything was correct and clear" on the face of exhibit 1. Cheryl's attorney indicated the documentation relevant to exhibit 1 was obtained after Anthony subpoenaed and then produced his bank records. No bank records were produced at the final hearing. Likewise, no bank records are included in the record on appeal.

¶ 15    After receiving closing arguments, the circuit court found, on the record, Cheryl failed to prove her claim of dissipation. The circuit court stated as follows:

"I didn't see any evidence of any 401K. It's not just enough for ***

[Cheryl] to say I knew it existed ***[.] I didn't hear anywhere in the testimony

5

that she was an expert on retirement[,] where she could guesstimate that it's 325,000 which was the biggest bulk of her thing she put together, but that's not evidence. It's not evidence at all."

The circuit court continued by stating: "You know, this is a trial. This is speculation. One side he said there isn't. She says there is. How do you see any evidence? You know, you say *** his counsel should have subpoenaed. You could have subpoenaed these documents."

¶ 16    On October 29, 2020, the circuit court entered a judgment of dissolution of marriage, formally finding, *inter alia*, "CHERYL did not prove her Dissipation Claim." The circuit court reasoned, "ANTHONY was precluded from testifying in regard to CHERYL's dissipation claim" but "CHERYL did not tender any evidence of a 401K owned by ANTHONY." The circuit court stated Cheryl "is not an expert on retirement where she could guesstimate that it's $325,000.00."

¶ 17    Cheryl filed a timely notice of appeal on November 12, 2020.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, the sole issue is whether the circuit court erred by finding Cheryl failed to prove Anthony dissipated marital assets under section 503(d)(2). That provision states:

> "(d) In a proceeding for dissolution of marriage ***, the court shall assign each spouse's non-marital property to that spouse. It also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:
>
> ***
>
> (2) the dissipation by each party of the marital property, provided that a party's claim of dissipation is subject to the following conditions:

(i) a notice of intent to claim dissipation shall be given no later than 60 days before trial or 30 days after discovery closes, whichever is later;

(ii) the notice of intent to claim dissipation shall contain, at a minimum, a date or period of time during which the marriage began undergoing an irretrievable breakdown, an identification of the property dissipated, and a date or period of time during which the dissipation occurred;

(iii) a certificate or service of the notice of intent to claim dissipation shall be filed with the clerk of the court and be served pursuant to applicable rules;

(iv) no dissipation shall be deemed to have occurred prior to 3 years after the party claiming dissipation knew or should have known of the dissipation, but in no event prior to 5 years before the filing of the petition for dissolution of marriage." 750 ILCS 5/503(d)(2) (West 2020).

In this case, the circuit court found Cheryl failed to prove the allegations made in the notice of intent to claim dissipation under section 503(d)(2)(ii).

¶ 20    Relevantly, dissipation occurs if a spouse, at a time when the marriage is undergoing an irretrievable breakdown, uses marital assets for his or her sole benefit and for a purpose unrelated to the marriage. See *id.*; *In re Marriage of Dhillon*, 2014 IL App (3d) 130653, ¶ 36; accord *In re Marriage of Awan*, 388 Ill. App. 3d 204, 215 (2009). A period of dissipation is calculated from the date the parties' marriage began to undergo an irretrievable breakdown and not from the date the marriage was irretrievably broken. *In re Marriage of Sinha*, 2021 IL App (2d) 191129, ¶ 33.

¶ 21    Importantly, the spouse alleging dissipation must make a preliminary or *prima facie* showing of dissipation. See *id.*; *In re Marriage of Budorick*, 2020 IL App (1st) 190994, ¶ 88.

7

Such a showing can be made with evidence of large withdrawals of cash from the parties' bank accounts, losses to the marital estate that were caused by the mismanagement of marital assets over time, or cash withdrawals or expenditures that add up to a substantial amount over months or years. See *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶¶ 80-82. A preliminary or *prima facie* showing of dissipation can also be made with evidence that a spouse used marital funds for living expenses that were selfish, excessive, and improper. See *id.* ¶ 81.

¶ 22    If a spouse establishes a preliminary or *prima facie* case of dissipation, then the burden shifts to the other spouse to prove, by clear and specific evidence, how the marital assets were spent. See *Awan*, 388 Ill. App. 3d at 216; accord *Sinha*, 2021 IL App (2d) 191129, ¶ 33. If the spouse charged with dissipation does not meet the burden of adequately documenting that his or her use of the marital assets was for a legitimate family expense, then the circuit court must find a dissipation of the marital estate. See *Awan*, 388 Ill. App. 3d at 215-17; *Budorick*, 2020 IL App (1st) 190994, ¶ 88. However, dissipation is merely one factor considered during the division of marital property. *In re Marriage of Berberet*, 2012 IL App (4th) 110749, ¶ 51. If dissipation is established, the circuit court may, but is not required, to charge the dissipating party. See *id.*; accord *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 108; *Awan*, 388 Ill. App. 3d at 217. A ruling on a claim of dissipation will not be reversed unless it is against the manifest weight of the evidence, meaning it is clearly apparent the circuit court should have reached the opposite conclusion or the ruling was arbitrary, unreasonable, or not based on the evidence. *Dhillon*, 2014 IL App (3d) 130653, ¶¶ 29, 36; accord *Sinha*, 2021 IL App (2d) 191129, ¶ 32.

¶ 23    Here, Cheryl argues exhibit 1 and her unrebutted testimony at the final hearing proved a *prima facie* case of dissipation against Anthony. As such, Cheryl argues the allegations in the notice of intent to claim dissipation, as supported by her testimony at the final hearing, should

8

have been taken as true unless disproved by contrary evidence. Cheryl posits Anthony could not disprove her *prima facie* case of dissipation since he was excluded from testifying on that claim. Therefore, Cheryl argues the circuit court was required to enter a finding of dissipation, especially in light of Anthony's alleged refusal to produce documents related to that claim.

¶ 24      Anthony responds by arguing, other than exhibit 1, which was drafted by Cheryl with various "unknowns," no evidence was presented to establish a *prima facie* case of dissipation. Anthony argues Cheryl "failed to provide any evidence of the purported dissipation and [instead] relied on a document," exhibit 1, "that she herself typed." Anthony emphasizes that there was no evidence of a 401(k) plan, bank statements, or other documentation to support exhibit 1 or identify the alleged dissipation. On the issue of his compliance in discovery, Anthony notes he submitted affidavits of compliance and completeness with no knowledge of any 401(k) plan.

¶ 25      After our careful review of the record and the transcript of the final hearing, we conclude the circuit court's finding that Cheryl failed to prove Anthony dissipated marital assets under section 503(d)(2) was not against the manifest weight of the evidence. Initially, the only evidence of a 401(k) plan possessed by Anthony was exhibit 1, an out-of-court statement by Anthony that was relayed by Roberta, and Cheryl's own testimony. Exhibit 1, however, is a wholly inadequate and self-serving tabulation that was admittedly prepared by Cheryl. That tabulation does not specify the 401(k) plan at issue or provide anything other than an "unknown" date of dissipation and an estimate of the funds dissipated. Moreover, the circuit court was not bound by Roberta's recounting of Anthony's statement that " 'you'll never have to worry about Cheryl because I have her on my 401K' " or Cheryl's testimony that Anthony "had a 401K plan and I knew how much was in it when I left and through the years." The circuit court was correct that Cheryl was not, nor did she claim to be, an expert with the experience or qualifications to

9

opine on the approximate increasing value of the unidentified 401(k) plan to estimate, over the course of years, the dissipation by Anthony. See *People v. Lerma*, 2016 IL 118496, ¶ 23.

¶ 26    Further, despite Anthony's exclusion from testifying on the claim of dissipation, the testimony on the 401(k) plan was not entirely unrebutted. During cross-examination, Cheryl admitted she had no proof, other than exhibit 1 and the aforementioned testimony, Anthony dissipated $325,000 from a 401(k) plan. See *Sweilem v. Illinois Department of Revenue*, 372 Ill. App. 3d 475, 485 (2007) (stating, a fact finder may discount witness testimony after an impeachment, contradiction by positive evidence or circumstance, or a finding of inherent probability). In other words, even assuming Cheryl and Roberta knew of an alleged 401(k) plan, the existence of which Anthony denies, Cheryl admitted she had no proof of the date or the amount of the dissipation from that 401(k) plan. Without further corroboration of the claimed dissipation of the alleged 401(k) plan under section 503(d)(2)(ii), it is not clearly apparent, even in the context of a *prima facie* case, the circuit court should have reached the opposite conclusion. See *Dhillon*, 2014 IL App (3d) 130653, ¶¶ 29, 36; *Sinha*, 2021 IL App (2d) 191129, ¶ 32.

¶ 27    With respect to the alleged "Unknown retirement investment withdrawals" and "Web transfers," the evidentiary deficiencies related to exhibit 1 are central to our conclusion that the circuit court's finding was not against the manifest weight of the evidence. Exhibit 1 was not substantiated at the final hearing with the very evidence that Cheryl claims, for the most part, resulted in its creation. Cheryl failed to admit Anthony's bank statements, which allegedly notified Cheryl of the bulk of the information contained in exhibit 1, to corroborate the figures contained in that self-serving tabulation. In the same vein, Cheryl's evidentiary oversight failed to substantiate the claim that Anthony was noncompliant during discovery. Cheryl claimed to

possess Anthony's bank statements, which allegedly proved the existence of a New York Life annuity and "Integrity" investments, yet Cheryl did not admit those bank statements as evidence validating exhibit 1 at the final hearing. Even if Cheryl's testimony about the existence of those assets is taken as true, there is no reliable evidence of dissipation. See *Budorick*, 2020 IL App (1st) 190994, ¶ 91 (holding husband failed to set forth a *prima facie* case of dissipation, where he "failed to introduce account statements or other evidence in support of his claims" and relied on testimony of withdrawals without "attempt[ing] to tie th[e] withdrawals to those he alleged in his notices of intent to claim dissipation"). Therefore, in relation to the "Unknown retirement investment withdrawals" and "Web transfers," we conclude it is not clearly apparent, even in the context of a *prima facie* case, the circuit court should have reached the opposite conclusion. See *Dhillon*, 2014 IL App (3d) 130653, ¶¶ 29, 36; *Sinha*, 2021 IL App (2d) 191129, ¶ 32.

¶ 28        Finally, we address Cheryl's suggestion that our court should be persuaded by Anthony's alleged noncompliance during discovery, which resulted in Cheryl's motion to compel discovery disclosures and motion for discovery sanctions. It is true, in the context of a dissipation claim, "[a]n enormous potential for prejudice lies if financial information is missing due to *** [a] failure to comply with discovery." *In re Marriage of Brown*, 2015 IL (5th) 140062, ¶ 58 (quoting *In re Marriage of Barnett*, 344 Ill. App. 3d 1150, 1153 (2003)). However, here, Anthony filed affidavits of compliance and completeness, attesting to the fact that he complied with Cheryl's requests for production and interrogatories. Anthony also denied having a 401(k) plan and the record does not indicate that plan exists. Despite the parties' conflicting positions, we conclude the circuit court could properly find Cheryl failed to prove a *prima facie* case of dissipation.

¶ 29                                III. CONCLUSION

¶ 30        The judgment of the circuit court of Will County is affirmed.

¶ 31     Affirmed.